In re GERI ZAHN, INC. d/b/a
Just Clothes, Debtor.

Gui L.P. GOVAERT, Trustee, Plaintiff,

v.

FIRST AMERICAN BANK AND TRUST
COMPANY, Defendant.

Bankruptcy No. 87–04586–BKC–AJC.
Adv. No. 89–0050–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida.

Dec. 19, 1991.

Stuart Levin, Miami, Fla., for debtor/plaintiff.

Robert Young, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Orlando, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON REMAND

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came before the Court on April 11, 1991 on remand from the United States District Court. The district court remanded the case for a determination and recommendation as to the damages awarded the Trustee (Plaintiff) for the Defendant's First American Bank & Trust Company (FABT) violation of Florida Statutes §§ 674.402 and 673.407 and acts of common law fraud. The facts are as follows:

Barnett Bank loaned Just Clothes Corporation (Debtor) $150,000 consisting of a $100,000 promissory note and a $50,000 revolving line of credit. By offering lower rates, FABT persuaded the Zahns, the principles of the Debtor, to transfer these loans to FABT and, in turn, FABT would loan the Debtor $150,000.

On October 29, 1985, FABT sent a letter to the Zahns delineating the terms of the loan. The total amount of the loan was to be $150,000.00, with $100,000 to be applied as a capital loan to repay Barnett Bank and $50,000 to be used as a revolving line of credit and deposited in the Debtor's account with FABT. FABT proposed to hold as collateral for the loan a $25,000 C.D. in the name of Geri Zahn; a $50,000 C.D. in the name of Nathan Vlock; and a life insurance policy in the name of Jason Zahn, with a cash surrender value of $20,000.

The Zahns agreed to accept FABT's loan on the understanding that the funds from the revolving line of credit would be made available immediately. The Zahns explained they were going on a buying trip for the Debtor in December and needed the funds from the line of credit. Based on that understanding, the Zahns executed the loan papers on November 26, 1985.

Unbeknownst to the Zahns, however, FABT did not fund the line of credit on November 26, 1985. In fact, FABT would not fund the revolving line of credit until January 8, 1986.

Further unbeknownst to the Zahns, the terms of the executed loan papers were far less favorable than the terms represented in the October 29, 1985 letter.

Meanwhile, in December, 1985, the Zahns went to New York on a buying trip and purchased merchandise from several wholesale merchants. They paid with checks drawn on their FABT account. By January, 1986, FABT had dishonored a series of those checks totalling over $50,000.

Approximately one year later, the Debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code. In October, 1988, the case was converted to Chapter 7 and the Plaintiff subsequently commenced this adversary proceeding. Plaintiff's complaint against FABT alleged common law fraud, wrongful dishonor of checks, and interference with an advantageous business relationship.

On July 13, 1989, 109 B.R. 497, this Court entered Findings of Fact and Conclusions of Law as follows:

1. FABT engaged in common law fraud by intentionally misrepresenting the terms of the loan to the Debtor, thereby persuading the Debtor to transfer its loans from Barnett Bank;

2. FABT altered the terms of the loan agreement, in violation of Florida Statutes § 673.407. As a result, the instrument should be enforced according to its original provisions as spelled out in the oral banking agreement and the October 29, 1985 letter;

3. FABT wrongfully dishonored the Debtor's checks, in violation of Florida Statutes § 674.402, ruining the Debtor's business reputation and forcing the Debtor into bankruptcy; and

4. FABT owed damages in the amount of $349,000.

On July 21, 1989, FABT appealed to the United States District Court. On April 16, 1990, Federal Deposit Insurance Corporation (Defendant), as Receiver for FABT, was substituted as Defendant.

On December 14, 1990, the district court entered an Order and Memorandum Opinion adopting this Court's findings, but remanded the case for further findings on

the amount of damages owed Plaintiff, both compensatory and punitive.

## CONCLUSIONS OF LAW

Under Florida law, a "payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item." Fla.Stat. § 674.402. Defendant contends that it is not liable to the Debtor because FABT dishonored only 12 checks, of which a maximum of 5 were payable to the sellers of merchandise in New York. Accordingly, Defendant argues FABT's wrongful dishonor was not the proximate cause of the Debtor's bankruptcy. However, this Court does not find "proximate cause" to be the issue here on remand inasmuch as the July 13, 1989 Findings of Facts and Conclusions of Law found that FABT's wrongful dishonor was the proximate cause of the Debtor's bankruptcy and the district court adopted this finding. Moreover, in its remand order, the district court agreed that FABT was responsible for the damages the Debtor incurred when it wrongfully refused to honor the checks presented.

The issue the district court remanded is the exact amount of damages owed Plaintiff given FABT's wrongful dishonor which caused the Debtor's bankruptcy.[1] The Plaintiff requests this Court calculate damages by adding up the value of the Debtor's assets at the time of the filing of Debtor's Chapter 11 petition. Plaintiff's expert assessed the value of the Debtor's assets at the time of the Chapter 11 filing as follows:

| | |
|---|---|
| Inventory | $217,000 |
| Accounts Receivables | 3,000 |
| Rent Security Deposit | 6,100 |
| Furniture, Fixtures, and Improvements | 14,000 |
| Cash | 13,000 |
| C.D. in name of Nathan Vlock (collateral for loan) | 50,000 |
| C.D. in name of Geri Zahn (collateral for loan) | 25,000 |
| Cash Surrender Value of life insurance (Jason Zahn) | 20,000 |
| TOTAL = | $348,100 |

■ Defendant argues that the Plaintiff cannot recover damages for the CD's and life insurance policy because these items were assets of Vlock and the Zahns, not assets of the Debtor. This Court disagrees. Mr. Kaufman testified that the applicable accounting doctrine is economic substance over legal form. While the CD's and life insurance policy were not listed as assets on the Debtor's balance sheet, they were for the benefit of the Debtor. They were economically lent to the Debtor so that the Debtor could use them as collateral for the bank loan. Accordingly, this Court finds the CD's and life insurance policy were assets of the Debtor. Therefore, assuming Plaintiff's formula for damages is acceptable, the Plaintiff is entitled to damages in the amount of $348,100.[2]

---

**1.** Arguably, the Plaintiff need not even show proximate cause to receive substantial damages. *Elizarraras v. Bank of El Paso,* 631 F.2d 366 (5th Cir.1980). In *Elizarraras,* the Fifth Circuit held that where the wrongful dishonor is intentional, as in the instant case, the common law trader rule applies. *Id.* at 377. Under the trader rule, a Plaintiff can recover substantial damages due to a loss of credit on a showing of "business size, past income, prospects, and need and past use of credit." *Id. See also* White & Summers, *Uniform Commercial Code* 892 (3d ed. 1988). Nevertheless, other courts believe that the U.C.C. rejects the trader rule, even in the case of mistake. *See, e.g. Raymer v. Bay State National Bank,* 384 Mass. 310, 424 N.E.2d 515 (1981). These courts cite Comment 3 to U.C.C. 4–402. However, because we believe that Plaintiff proved that FABT's wrongful dishonor was the proximate cause of the Debtor's bankruptcy, we do not address the issue of whether the trader rule applies.

**2.** As a practical matter, too, the court is compelled to classify the CD's and life insurance policy as assets of the Debtor. FABT's wrongful dishonor caused the Debtor to default on the loan. When the Debtor defaulted, FABT seized the CD's and life insurance policy, amounting to $95,000, which was posted as collateral for the loan. Essentially, Vlock and the Zahns lent the Debtor the CD's and life insurance policy, so that the Debtor had a $95,000 debt to Vlock and the Zahns. Pursuant to 11 U.S.C. 727(a), the Debtor is not discharged from its debts following bankruptcy, so Vlock and the Zahns should be able to collect the money they "lent to the Debtor."

If we deem the CD's and life insurance policy as assets of Vlock and the Zahns, and not of the Debtor, it is questionable whether Vlock and the Zahns would have a cause of action against FABT. U.C.C. 4–402 states that a bank is liable to its customer for the wrongful dishonor of checks. A number of courts have held that an

One court has upheld the Plaintiff's formula for damages. In *Murdaugh Volkswagen v. First Nat'l Bank of So. Carolina,* 801 F.2d 719 (4th Cir.1986), a bank's wrongful dishonor of checks forced a car dealership into bankruptcy. The lower court measured damages by adding up the value of the dealership's assets at the time it filed bankruptcy. The United States Court of Appeals for the Fourth Circuit upheld this formula for damages on the grounds that it was "not unreasonable." *Murdaugh Volkswagen,* 801 F.2d at 727, n. 8.

However, notwithstanding the Fourth Circuit's decision, the formula does have two shortcomings. First, the formula does not factor in the financial status of the Debtor before the wrongful dishonor. For example, the greater the value of the Debtor before the wrongful dishonor, the greater the loss to the Debtor when FABT forced it into bankruptcy, and the greater the award of damages to Plaintiff should be. Second, Plaintiff's formula presumes that since the Debtor lost its assets in the liquidation proceeding, it should collect the value of these assets as damages. Yet, Plaintiff's formula fails to contemplate that the Chapter 7 liquidation benefits the Debtor's estate by decreasing the amount of the creditor's claims which, pursuant to 11 U.S.C. 727(a)(1), are not discharged.

■ A more accurate formula for damages would compare the value of the Debtor before the wrongful dishonor of checks to the value of the Debtor after the wrongful dishonor of checks, which is effectively the value of the Debtor after bankruptcy. Stated as a formula: Damages = V1 (value of Debtor prior to the wrongful dishonor) minus V2 (value of Debtor after the wrongful dishonor).

Calculating V2 is a relatively simple matter. V2 is typically a negative value, equal to the amount of debt remaining following liquidation of the Debtor's assets. In a Chapter 7 case, creditors seize the Debtor's assets to satisfy the debts the Debtor owes them. Generally, however, the liquidated assets are insufficient to satisfy all of the debts. Therefore, because a corporation's debts are not discharged, all that remains of a corporation following a Chapter 7 is debt.

In the instant case, at the time of the Chapter 7, the Debtor had debts of approximately $308,308.00. The value of the liquidated assets was approximately $8,849.00. Therefore, the value of the Debtor following the Chapter 7 liquidation was ($299,459.00). The creditors owed this amount are likewise victims of the Bank's wrongful conduct.

To calculate V1, the court must rely on financial statements, submitted as Plaintiff's Exhibit J, which reveal the Debtor's assets, liabilities, and earnings as of April 30, 1985. Given the figures in the Plaintiff's exhibit, the best, albeit imperfect, valuation formula for calculating V1 is the "sum of assets" technique. The formula under this technique is:

$$\text{Value} = \text{Current Assets} - \text{Current Liabilities} + \text{Tangible Assets} + \text{Intangible Assets}$$

This formula is based on the assumption that each of these elements can be individually valued and their sum represents the value of the enterprise. Smith, *Corporate Valuation, A Business and Ethical Guide,* 90 (1988).

---

individual shareholder of a corporation is not a "customer" of the bank. *See Koger v. East First Nat'l Bank,* 443 So.2d 141 (Fla. 2d DCA 1983); *Loucks v. Albuquerque Nat'l Bank,* 76 N.M. 735, 418 P.2d 191 (1966); *Farmers Bank v. Sinwellan Corp.,* 367 A.2d 180 (Del.1976); and *Thrash v. Georgia State Bank of Rome,* 189 Ga.App. 21, 375 S.E.2d 112 (Ga.App.1988). *But see Kendall Yacht Corp. v. United California Bank,* 50 Cal. App.3d 949, 123 Cal.Rptr. 848 (1975) (individual shareholder who executed a personal guarantee of a bank loan for corporation was a "custom-

er," where corporation was a "transparent shell ... that had no viability as a separate and distinct entity"). Thus, if we deem the collateral as assets of Vlock and the Zahns, inequity could result since Vlock and the Zahns might not have a cause of action against FABT under Florida Statutes § 674.402, and consequently, might not be able to collect the $95,000 they lost when the Bank took the collateral for application to the loan. Further, the Bank received the collateral and enjoyed full benefit thereof.

As of April 30, 1985, Debtor's Current Assets were $296,435. Current liabilities were $144,276. Tangible assets of the Debtor, factoring in depreciation, were $20,590.

The financial statements submitted by Plaintiff make no mention of the value of Debtor's intangible assets. The Court could estimate a value for intangible assets, but it has no expertise for so doing. Alternatively, the Court could assign a value of 0 to the intangible assets of the Debtor since Plaintiff, who has the burden of coming forward with evidence of damages, failed to provide figures for intangible assets. Assuming the value of intangible assets is 0, $V1 = \$296,435 - \$144,276 + \$20,590 + 0 = \$172,749$. Therefore, actual damages $= \$172,749 - (\$299,459.00) = \$472,208.00$.

The second issue before the Court is whether the Plaintiff is entitled to punitive damages. Many courts analyzing U.C.C. 4–402, which Florida Statute § 674.402 codifies, have held that a Plaintiff is entitled to punitive damages where the wrongful dishonor of checks is morally culpable, violative of public policy, or motivated by malice. *E.g., Casco Bank & Trust v. Bank of New York*, 584 F.Supp. 763 (D.Me.1984); *Shaw v. Union Bank and Trust*, 640 P.2d 953 (Okla.1981); and *Yacht Club Sales & Service v. First Nat'l Bank*, 101 Idaho 852, 623 P.2d 464 (1980). Furthermore, the Florida Supreme Court, in *First Interstate Development v. Ablanedo*, 511 So.2d 536, 539 (1987), citing its prior opinion in *Winn & Lovett Grocery Co. v. Archer*, 126 Fla. 308, 171 So. 214 (1936), held that "punitive damages are appropriate for any tortious conduct accomplished through fraud." The rationale for the award of punitive damages is that the defendant acts "willfully ... [and] with a wanton disregard of the rights of others." *Ablanedo*, 511 So.2d at 539.

In the instant case, FABT knowingly misrepresented terms of the loan to lure the Debtor to switch its banking from Barnett Bank. Furthermore, FABT knew that the Debtor needed access to the revolving line of credit to purchase merchandise on the buying trip to New York, yet failed to timely fund the line of credit and dishonored checks written by the Debtor. These actions are morally culpable, indicate a wanton disregard of the rights of the Debtor, and culminated in the Debtor's destruction. It is thus within the discretion of the Court to award punitive damages in the instant case.

To determine the amount of punitive damages the Court may award, Plaintiff contends Florida Statute § 768.73(1)(a) should control. Florida Statute § 768.73 states that "in any civil action based on ... misconduct in commercial transactions ... punitive damages shall not exceed three times the amount of compensatory damages." However, § 768.73 only applies to causes of action arising after July 1, 1986. Fla.Stat. § 768.71(2). The cause of action in the instant case arose in December of 1985, when FABT wrongfully dishonored the Debtor's checks. Therefore, § 768.73(1)(a) does not apply to the instant case.

Prior to July 1, 1986, the rule in Florida was that the amount of punitive damages awarded should be based on the wrong committed by the defendant and "need not bear any reasonable relation to the compensatory damages awarded." *Lassitter v. Internat'l Union of Operating Engineers, Local No. 675*, 349 So.2d 622 (Fla.1976). The rationale was that punitive damages were designed to punish the defendant and to deter such future wrongdoing, and were thus unrelated to compensatory damages. *Lassitter*, 349 So.2d at 626. It appears then it is within the Court's discretion to award punitive damages in an amount this Court determines to be commensurate with FABT's wrongdoing.

Although the Court believes it is within its discretion to award punitive damages in excess of an amount equal to three times the compensatory damages, the Court feels a punitive damage award in the amount of $100,000 is sufficient.

Accordingly, it is

ORDERED that judgment is entered in favor of Plaintiff against Defendant in the total amount of $572,208.00. A final judg-

ment will be entered in accordance with this order.

DONE and ORDERED.