**In re GERI ZAHN, INC., d/b/a
Just Clothes, Debtor.**

**FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff–
Appellee,**

v.

**Gui L.P. GOVAERT, Defendant–
Appellant.**

No. 93–4120.

United States Court of Appeals,
Eleventh Circuit.

July 14, 1994.

Stuart I. Levin, Miami, FL, for appellant.

Robert L. Young, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Orlando, FL, Manuel A. Palau, FDIC, Washington, DC, for appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and YOUNG *, Senior District Judge.

ANDERSON, Circuit Judge:

Gui L.P. Govaert, trustee in bankruptcy of Geri Zahn, Inc. d/b/a Just Clothes ("Just Clothes") appeals from the district court's finding that its claims for wrongful dishonor of checks, fraudulent inducement and misrepresentation against the Federal Deposit Insurance Corporation ("FDIC") as receiver for the First American Bank and Trust ("FABT") are barred by the common law *D'Oench* doctrine and 12 U.S.C. § 1823(e). For the reasons that follow, we affirm the district court's order.

## I.  BACKGROUND

Jason Zahn and Geri Zahn operated a clothing store known as Just Clothes. Although Just Clothes originally had its commercial banking relationship with Barnett Bank, in 1985, representatives of FABT persuaded the Zahns that it would be more advantageous for them to switch their business accounts to FABT. Representatives of

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

FABT met with the Zahns at their office and over lunch on numerous occasions.

On October 29, 1985, Tom Abrams, a vice president and general manager of the local branch of FABT, sent a letter to the Zahns referenced "Financial Relationship and Conditions," which set forth terms of a proposed loan to Just Clothes. This letter stated that the requested $150,000 loan would be comprised of a $100,000 capital loan with a five year term and a $50,000 revolving line of credit, both at a rate of 1 and ½% over prime. The letter also required that Just Clothes deposit $25,000 in an interest bearing account at FABT. At the time the letter was written, FABT's loan committee had not yet approved any loan to Just Clothes. Subsequently, Abrams and Caroline Graves, president of FABT, visited the clothing store, at which time Graves allegedly told Zahn that the committee had approved the loan.

The loan closing took place on November 26, 1985. The Zahns, Abrams, and George Jordan, a loan officer for FABT, were present. At the closing, Jordan explained the loan documents to the Zahns and presented them for execution. The Zahns signed a promissory note ("Note") which called for a loan of $150,000 at interest of 1 and ½% over the bank's prime rate. The Note also required cash collateral in the amount of $75,-000. The Zahns did not obtain copies of the loan documents at the closing. In December of 1985, the Zahns went to New York on a buying trip and wrote a number of checks on their new checking account at FABT which were subsequently dishonored.

In the summer of 1986, the Zahns received copies of the loan documents that they had executed on November 26, 1985, including the Note, U.C.C. financing statement, security agreement, guaranty, assignment of lease, and landlord's waiver. Upon reviewing the loan documents, the Zahns discovered that some of the documents, including the Note, were dated January 8, 1986, instead of November 26, 1985. Some of the provisions inserted in the Note also varied from the terms the Zahns expected following discussions with bank personnel and the October 29, 1985 letter. A floor was placed on the interest rate at 11%. The term of the loan was one year instead of five years, with additional collateral listed for the loan.

Zahn testified at trial that at the time he signed the Note, certain provisions of the Note and other loan documents had not been completed, including the date, the amount of collateral required for the loan and the interest rate. According to Zahn, he executed the Note and loan documents even though these material terms had been left blank because he trusted the bank and assumed that it would conform to the terms set forth in its letter of October 29, 1985.

Jordan testified that the Zahns neither reviewed the loan documents prior to signing them, nor asked Jordan any questions about them. According to Jordan, all of the provisions had been completed at the time of signing except for the date because it was FABT's practice not to date a note until it was actually funded. The Note signed by the Zahns was subsequently dated January 8, 1986.

Zahn also testified at trial that at the November 26, 1985, closing, Jordan told him that the loan would be funded that day or the next. Zahn contended that the checks were dishonored as a result of FABT's refusal to immediately fund the loan. According to Zahn, Abrams had assured him that all the checks the Zahns had written would be honored.

Jordan disputed that the funding date was ever discussed at the closing, and both he and Abrams denied telling Zahn that the loan would be funded by the next day. Jordan testified that FABT honored all checks written up to the $50,000 amount of the revolving credit loan, but returned checks for payment once the Zahns had exhausted the balance of the credit loan. The statement of account for the month of December, 1985, showed a negative balance in the account of $47,327.11 as of December 31, 1985.

As a result of the dishonored checks, several vendors in New York refused to sell merchandise to the Zahns on terms which would permit Just Clothes to stay in business. In January, 1987, Geri Zahn, Inc. d/b/a Just Clothes filed for protection in bankruptcy under Chapter 11. Subsequently, the

case was converted to a Chapter 7 liquidation proceeding.

Govaert, trustee for Just Clothes, filed an adversary proceeding against FABT, alleging common law fraud, wrongful dishonor of checks, and intentional interference with an advantageous business relationship. The bankruptcy court conducted a trial on May 17, 1989 and issued findings of fact and conclusions of law, entering judgment against FABT in the amount of $349,000. FABT filed a notice of appeal from the judgment with the district court on September 12, 1989.

In December 1989, the Comptroller of the Currency declared FABT to be insolvent and appointed the FDIC as its receiver. Accordingly, the district court substituted FDIC, receiver for FABT, as the party appellant on April 16, 1990. The district court on December 14, 1990, remanded the case to the bankruptcy court for further findings as to the issue of damages.

On January 15, 1991, FDIC moved for clarification, rehearing, reconsideration or relief from the December 14, 1990 order, arguing that the *D'Oench* doctrine and 12 U.S.C. § 1823(e) precluded the trustee from maintaining an action against the FDIC. The district court granted the motion on February 5, 1991, issuing an order clarifying that, after *de novo* review, it adopted the bankruptcy's findings and conclusions except with respect to the issue of damages which was remanded to the bankruptcy court.

The bankruptcy court issued findings of fact and conclusions of law with respect to the issue of damages on December 19, 1991. *Govaert v. First American Bank & Trust Co.*, 135 B.R. 912 (S.D.Fla.1991). The bankruptcy court entered judgment for the trustee in the amount of $572,208, representing $472,208 in compensatory damages and $100,000 in punitive damages. FDIC moved the bankruptcy court to alter or amend its findings on the grounds that: (1) it lacked jurisdiction to enter a final judgment; (2) the Zahns' claims were barred under the *D'Oench* doctrine and 12 U.S.C. § 1823(e); and (3) FDIC was exempt from punitive damages. On February 6, 1992, the bankruptcy court ordered the FDIC to redeposit a cash bond with the court and further directed the trustee to execute its judgment exclusively against that bond.

FDIC appealed the bankruptcy court's findings, conclusions, and judgment of December 19, 1991 to the district court on March 25, 1992. On April 6, 1992, FDIC also appealed the bankruptcy court's February 6, 1992 order pertaining to redeposit of the cash bond. Among numerous objections, FDIC reiterated its position first raised in its motion to reconsider the district court's December 14, 1990 order, that the *D'Oench* doctrine and 12 U.S.C. § 1823(e) barred the assessment of liability and damages against FDIC for wrongful dishonor, fraudulent inducement or misrepresentation, where the claims were based on oral or written side agreements.

On December 9, 1992, the district court issued an order finding that the claims against the FDIC as receiver for FABT were barred under the *D'Oench* doctrine and 12 U.S.C. § 1823(e). The district court held that the FDIC was free to enforce the terms of the January 8, 1986 promissory note and reversed the bankruptcy court's order regarding redeposit of the cash bond.

On January 27, 1993, appellant filed this appeal, arguing that the district court erred in holding its claims barred, urging that the *D'Oench* doctrine and 12 U.S.C. § 1823(e) are inapplicable to tort claims not involving personal injury or property damage. For the reasons that follow, we affirm the judgment of the district court.

## II. STANDARD OF REVIEW

■ Because the determination of the applicability of the *D'Oench* doctrine involves a question of law, we review the findings of the bankruptcy and district courts *de novo*. *In re Empire for Him*, 1 F.3d 1156, 1158–59 (11th Cir.1993).

## III. DISCUSSION

Our analysis begins with an examination of the *D'Oench* doctrine's origins and with the leading case itself. In *D'Oench Duhme v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held that a

"secret agreement" outside the documents contained in the bank's records would not operate as a defense against suit by the FDIC on a note acquired from a failed bank. *Id.* at 459, 62 S.Ct. at 680. Preventing such "secret agreements" permits bank examiners to readily ascertain the bank's assets and its solvency. *Id.* at 460, 62 S.Ct. at 680. Accordingly, where the maker of a note "lent himself to a scheme or arrangement whereby the banking authority ... was likely to be misled," such a scheme or arrangement would not constitute a defense against the FDIC's suit on the note. *Id.*

■ Subsequent cases have expanded *D'Oench* so that it "now applies in virtually all cases where a federal depository institution regulatory agency is confronted with an agreement not documented in the institution's records." *Baumann v. Savers Federal Savings and Loan Assoc.,* 934 F.2d 1506, 1510 (11th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992). As articulated by this court, the *D'Oench* doctrine provides:

> In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

*Id.* at 1515.[1]

Two policies fuel the *D'Oench* doctrine's requirement of memorialization of agreements. First, application of *D'Oench* permits federal and state bank examiners to rely upon the bank's records of regular banking transactions in evaluating the institution's fiscal soundness. *Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). Particularly where the FDIC is deciding whether to liquidate a failed bank, determinations must be made " 'with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services.' " *Id.* at 91, 108 S.Ct. at 401 (quoting *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982)). Second, requiring that agreements be executed and become regular banking records is designed to "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." *Langley,* 484 U.S. at 91, 108 S.Ct. at 401.

■ Appellant urges application of a narrow exception to the applicability of *D'Oench* which this circuit has adopted. *D'Oench* does not operate "to bar free standing tort claims." *Vernon v. Federal Deposit Ins. Corp.,* 981 F.2d 1230, 1233–34 (11th Cir.1993). Not all tort claims are barred. Rather, the key inquiry is one of relatedness. This requirement demands that a tort be sufficiently intertwined with regular banking transactions, such that exclusion of the alleged "secret agreement" accords with the underlying policies of *D'Oench.* *OPS Shopping Center, Inc. v. Federal Deposit Ins. Corp.,* 992 F.2d 306, 310 (11th Cir.1993).

■ One obvious indicia of relatedness would be whether the oral representations were of matters that would generally be reflected in the records of ordinary banking

---

1. The *D'Oench* doctrine has been codified at 12 U.S.C. § 1823(e), which provides in pertinent part:

   No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section ..., either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
   (1) is in writing,
   (2) was executed by the depository institution and any person claiming an adverse interest

   thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
   (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
   (4) has been, continuously, from the time of its execution, an official record of the depository institution.
   12 U.S.C. § 1823(e).

transactions. This reflects the central purpose of *D'Oench:* bank examiners should be permitted to rely upon the institution's records of regular banking transactions. For example, in *Langley,* the Supreme Court applied section 1823(e) to bar a claim based upon an oral misrepresentation, notwithstanding the fact that the claim sounded in tort. The alleged fraudulent misrepresentations in *Langley* occurred during negotiation of a loan. 484 U.S. at 89, 108 S.Ct. at 400. In the instant case, the alleged misrepresentations not only were incurred during the negotiation of the loan, but the misrepresentation involved the terms of the loan itself, and conflicted with the terms as set out in the written documentation.

■ By contrast, in *Vernon,* the free standing tort claim at issue involved alleged violations of securities laws and related claims arising from the claimants' purchase of preferred stock and warrants to purchase common stock in the failed institution itself. Relevant records would reside in the department of the bank which handled the sale or transfer of the bank's own stock, as opposed to the records of regular banking transactions. Thus, the relatedness requirement rests upon the recognition that the *D'Oench* doctrine does not encompass those free standing torts which do not implicate the records of regular banking transactions. *OPS,* 992 F.2d at 310–11.

■ Appellant argues that his claims fall within this narrow exception and thus are not barred. We disagree. According to appellant, the written loan terms did not reflect the parties' true agreement with respect to the date of the Note and time of funding.[2] The alleged oral agreements were obviously part and parcel of the loan negotiations. As such, they are matters which would normally be reflected in the records of regular banking transactions. Indeed, in this case, appellant challenges the express written terms of the Note, claiming that the written terms were in conflict with the alleged oral agreement and thus not consistent with the parties' true intent.

We readily conclude that appellant's claim is barred by *D'Oench.* This case falls well within the core of the *D'Oench* bar, and well outside of the narrow "free standing" tort exception.

■ Appellant makes two interrelated arguments concerning the judgment entered by the bankruptcy court in favor of appellant prior to FDIC's takeover of the bank. First, appellant argues that this judgment constituted a reliable record, precluding application of the *D'Oench* bar. Second, appellant urges that pursuant to that judgment, the funds ceased to be an asset of the bank, thus preventing the FDIC from acquiring any "right, title or interest." *See Grubb v. Federal Deposit Ins. Corp.,* 868 F.2d 1151, 1158–59 (10th Cir.1989); *Thurman v. Federal Deposit Ins. Corp.,* 889 F.2d 1441, 1447 (5th Cir.1989); *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n,* 885 F.2d 266, 275 (5th Cir.1989). The *Grubb* decision reasoned that a judgment "voiding" an asset left no asset for the receiver to acquire. *Grubb,* 868 F.2d at 1158. This reasoning ignores the fact that an appealable judgment might be reversed, and economic value remains in the asset itself. This Court has previously recognized that permitting the *D'Oench* bar to be asserted on appeal may upset the result reached in the trial court. *Baumann v. Savers Federal Sav. & Loan Assoc.,* 934 F.2d 1506, 1514 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992) ("While we realize that allowing RTC to raise [the *D'Oench* argument] here for the first time may result in overturning the outcome reached in the trial court, we are aware of Congress's recognition that '[t]he appointment of a conservator or receiver can often change the character of litigation....'") (quoting H.R.Rep. No. 54, 101st Cong., 1st Sess. at 331 (1989), *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 127). Further, the mere fact of appellant's claim being "of record" cannot be dispositive, given the Supreme Court's rejection of knowledge of the FDIC as a defense to *D'Oench. Langley,* 484 U.S. at 95, 108 S.Ct. at 403. *See OPS,* 992 F.2d at 311 n. 5 (actual knowledge of a claim prior to takeover is irrelevant).

2. Appellant also alleged that the written documentation contained other additions and alterations, including the imposition of an 11% floor on the interest rate, reduction in the term of the loan from five years to one year, and the listing of additional collateral for the loan.

The *Grubb* court overlooked the requirement of *D'Oench* and section 1823(e) that bank records be contemporaneous to a transaction, and overlooked the fact that the judgment there, like the judgment in this case, was not contemporaneous. Thus, when the FDIC examiners made their periodic examinations of the·bank records—which of course provides the basis for their on-going evaluation of the bank—they were "unable to detect the unrecorded agreement and to prompt the invocation of protective measures." *Langley*, 484 U.S. at 95, 108 S.Ct. at 403. This result is further supported by sections 1821(d)(13)(A) and (B) of FIRREA which indicate that FDIC on appeal can assert all rights available to it, including the *D'Oench* doctrine.[3] Because the judgment of the bankruptcy court is not a final, unappealable judgment under section 1821(d)(13)(B) and is still subject to examination and correction on appeal, we conclude that the FDIC may assert *D'Oench* for the first time on appeal in the district court, notwithstanding its knowledge of an outstanding judgment at the time of takeover.

Appellant's other arguments on appeal are without merit and warrant no discussion.

## IV.   CONCLUSION[4]

Accordingly, we conclude that appellant's claims against the FDIC in its capacity as receiver are barred by the common law *D'Oench* doctrine and 12 U.S.C. § 1823(e). The judgment of the district court is

AFFIRMED.

---

**3.** The relevant sections of FIRREA provide:
(13) Additional rights and duties
(A) Prior final adjudication
The [FDIC] shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the [FDIC] as conservator or receiver.
(B) Rights and remedies of conservator or receiver.
In the event of any appealable judgment, the [FDIC] as conservator or receiver shall—
(i) have all the rights and remedies available to the insured depository institution (before the appointment of such conservator or receiver)

and the [FDIC] in its corporate capacity, including removal to Federal court and all appellate rights;  and
(ii) not be required to post any bond in order to pursue such remedies.
12 U.S.C. § 1821(d)(13)(A) and (B) (1993).

**4.** The parties were invited at oral argument to file supplemental briefs addressing the applicability of the recent panel opinion in *Jones v. Resolution Trust Corp.*, 7 F.3d 1006 (11th Cir. 1993). However, rehearing en banc has been granted in *Jones*, and the panel opinion was vacated. *Resolution Trust Corp. v. Dunmar Corp. et al.* 20 F.3d 397 (11th Cir.1994).