39 F.3d 292
 63 USLW 2373
 MOTORCITY OF JACKSONVILLE, LTD., a limited partnership, By
and Through its general partner MOTORCITY OF
JACKSONVILLE, INC., a Florida
Corporation, David Hess,
Plaintiffs-Appellants,
v.
SOUTHEAST BANK N.A., David Feigenbaum, Defendants,
Federal Deposit Insurance Corporation, as receiver for
Southeast Bank, N.A., Defendant-Appellee.
 No. 93-4634.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 5, 1994.
 
 Lawrence R. Heller, Dyanne E. Feinberg, Miami, FL, Kipp A. Coddington, Christopher D. Cerf, Daniel E. Troy, Stephen Goldman, Washington, DC, for appellants.
 Julie Feigeles, S. Alyssa Roberts, Washington, DC, for appellee.
 Appeal from the United States District Court for the Southern District of Florida.
 Before KRAVITCH and BIRCH, Circuit Judges, and HOEVELER*, Senior District Judge.
 BIRCH, Circuit Judge:
 
 
 1
 This appeal tests the limits of the free standing tort exception to the common law D'Oench doctrine, developed in D'Oench Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and codified in 12 U.S.C. Sec. 1823(e). Because we find that the alleged tortious conduct does not fall within the scope of regular banking transactions, we conclude that the D'Oench doctrine does not bar the tort claims at issue. We VACATE and REMAND for proceedings consistent with this opinion.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 In 1986, plaintiffs-appellants Motorcity of Jacksonville, Ltd., Motorcity of Jacksonville, Inc., and David S. Hess (collectively "Motorcity") negotiated with Southeast Bank, N.A. ("Southeast") a floor plan financing agreement, under which Southeast would lend Motorcity funds to purchase inventory for its used car dealership (the "Agreement"). In the course of the negotiations, Motorcity informed Southeast that its principal investors, who lacked any experience in running a car dealership, planned to operate the dealership as absentee owners. Southeast assured Motorcity that its personnel were experienced with floor plan financing and that "the bank 'knew what it was doing.' " R2-58 Ex. 1 p 14. Motorcity and Southeast executed the Agreement in June, 1987.
 
 
 3
 Pursuant to the Agreement, Southeast retained the right to audit Motorcity's records.[1] Of particular concern to both Southeast and Motorcity were "out-of-trust" sales, which result whenever a dealership fails to use the proceeds from a sale to repay the loan designated for that vehicle; continued unchecked, such out-of-trust sales can threaten a dealership's financial viability. Southeast hired an independent contractor to audit Motorcity on a monthly basis. Through these audits, the bank discovered a pattern of out-of-trust sales occurring at the dealership. Although Southeast sent summary audit reports to Motorcity, the bank allegedly failed to disclose these out-of-trust sales to Motorcity. Because of these unrecorded sales, the dealership failed in 1989, and Motorcity suffered damages in excess of $50,000.
 
 
 4
 Alleging breach of fiduciary duty, breach of oral contract, and negligence (the "Original Complaint"), Motorcity brought suit in Florida state court against Southeast and one of its employees. Less than a year later, Southeast was declared insolvent, and defendant-appellee Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver for the failed bank. The FDIC was substituted for Southeast as defendant, whereupon the FDIC removed the case to federal court pursuant to 12 U.S.C. Sec. 1819.
 
 
 5
 Motorcity amended its complaint to state a claim for breach of written contract (the "First Amended Complaint"). The district court dismissed this First Amended Complaint for failure to state a claim upon which relief could be granted. The court found that the Agreement gave Southeast the right, but not the duty, to audit Motorcity; thus Southeast was under no obligation to inform Motorcity of the out-of-trust sales. The court further ruled that the D'Oench doctrine and 12 U.S.C. Sec. 1823(e) required any agreement between a failed financial institution and its customer to be in writing; consequently, any claims for breach of oral contract were barred.[2] Finally, the court held that the D'Oench doctrine also foreclosed Motorcity's tort claims. The court reasoned that "[t]he genesis of this action is the Southeast floor plan financing agreement, whose written provisions do not support a breach of contract claim against the FDIC. No amount of artful pleading, including further amendments to the complaint, can alter this result." R2-52-8.
 
 
 6
 Motorcity moved for a rehearing and for leave to amend its complaint to add state tort claims for negligence and for breach of fiduciary duty to notify (the proposed "Second Amended Complaint"). The district court denied both motions. In its omnibus order, the court reiterated that the D'Oench doctrine barred all oral contract claims, including those claims recast as tort actions by " 'artful pleading.' " R2-67-1-2. On appeal, Motorcity contends that the district court erred in denying Motorcity's motion to amend its complaint.
 
 II. DISCUSSION
 A. Jurisdiction
 
 7
 As a threshold matter, we must decide whether this court has jurisdiction over the present appeal. We review questions of subject matter jurisdiction de novo. Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians, 999 F.2d 503, 506 (11th Cir.1993). The FDIC asserts that the federal courts lack jurisdiction under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.), because Motorcity has not yet exhausted its administrative remedies before the FDIC as required by 12 U.S.C. Sec. 1821(d). Significantly, the FDIC has previously argued this issue in this case. Before the district court, the FDIC contended that FIRREA required Motorcity to submit its grievances to the FDIC's administrative claim review process before pursuing the matter in court. Motorcity responded by providing to the FDIC a Statement of Claim, in which Motorcity restated the factual and legal allegations of its Original Complaint. The FDIC disallowed Motorcity's claim, whereupon the district court denied the FDIC's motion to dismiss as moot.
 
 
 8
 Before this court, the FDIC makes essentially the same argument with respect to the proposed Second Amended Complaint. The FDIC maintains that the Statement of Claim previously submitted by Motorcity did not contain "a claim based on torts 'wholly independent' from the written agreement." Appellee's Brief at 29. The FDIC contends that the tort claims asserted in Motorcity's proposed Second Amended Complaint are materially different from the claims previously reviewed by the FDIC, and thus "no court has jurisdiction to hear Motorcity's separate tort claims." Id.
 
 
 9
 Whether FIRREA creates a statutory exhaustion requirement is a question of first impression for this court. Section 1821(d)(13)(D) grants the FDIC primary jurisdiction over claims brought against banks for which the FDIC has been appointed receiver:
 
 
 10
 Except as otherwise provided in this subsection, no court shall have jurisdiction over--
 
 
 11
 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
 
 
 12
 (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.
 
 
 13
 12 U.S.C. Sec. 1821(d)(13)(D). If claimants fail to submit their grievances to the FDIC, section 1821(d)(6)(B) divests them of their rights and remedies with respect to these claims:
 
 
 14
 If any claimant fails to(i) request administrative review of any claim ... or
 
 
 15
 (ii) file suit on such claim (or continue an action commenced before the appointment of the receiver), before the end of the 60-day period [following the FDIC's disallowance or failure to review a submitted claim], the claim shall be deemed to be disallowed ... as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.
 
 
 16
 12 U.S.C. Sec. 1821(d)(6)(B).[3] Reading these two provisions together, we conclude that FIRREA makes exhaustion of the FDIC's administrative complaint review process mandatory when the FDIC has been appointed receiver for a financial institution.[4] If the claimant has initiated its suit in a court prior to the FDIC's appointment as receiver, as has Motorcity, the claimant must exhaust its administrative remedies before continuing its action in state or federal court. Cf. 12 U.S.C. Sec. 1821(d)(5)(F)(ii) ("Subject to paragraph (12) [requiring courts to suspend legal actions upon the receiver's request], the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver.").
 
 
 17
 Having concluded that FIRREA creates a statutory exhaustion requirement, we next decide whether Motorcity met that requirement. The FDIC argues that Motorcity's Statement of Claim did not adequately present the tort claims in the Second Proposed Complaint, and it cites a federal district court's decision in Coleman v. FDIC, 826 F.Supp. 31, 32 (D.Mass.1993), in support of its contention that appellees failed to exhaust their administrative remedies. In Coleman, the court considered an amended complaint that contained "entirely new causes of action based on entirely new facts," not previously submitted to the FDIC's administrative claims process. See id. at 32, 33. Citing FIRREA's exhaustion requirement, the court dismissed the new claims "to the extent that they [made] factual allegations not asserted in the original Complaint." Id. at 33.
 
 
 18
 Motorcity's Statement of Claim, while interwoven with references to the written agreement between Motorcity and Southeast, nonetheless makes repeated references to Southeast's duty to inform and to its alleged negligence in auditing Motorcity's records and inventory.[5] Indeed, the Statement of Claim mentions Southeast's duty to inform and its negligence in carrying out that duty as often as it highlights Southeast's failed contractual performance. These repeated references to Southeast's duty and to its negligence were sufficient to give FDIC notice that Motorcity's claim consisted of both contract and tort causes of action. Moreover, the same basic factual and legal allegations contained in the Statement of Claim form the crux of Motorcity's tort claims in its proposed Second Amended Complaint. Thus, the proposed Second Amended Complaint does not assert "entirely new causes of action based on entirely new facts." Motorcity therefore has exhausted its administrative remedies with respect to the tort claims in the proposed Second Amended Complaint, and we have jurisdiction over the present appeal. Nevertheless, as we discuss subsequently, if only state law claims remain after our decision and after the FDIC has filed its answer, this case should be remanded to the district court for transfer to state court for disposition of the state claims.
 
 B. Standard of Review
 
 19
 Motorcity appeals solely the district court's denial of its motion to file the Second Amended Complaint. Our review standard for a district court's denying a motion to amend a complaint is abuse of discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802-03, 28 L.Ed.2d 77 (1971); Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir.1989). After a responsive pleading has been filed, subsequent amendments are permissible only with leave of court, which "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); see Shipner, 868 F.2d at 407. This liberal policy of allowing amendments under Rule 15(a) "circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." Shipner, 868 F.2d at 407; see also Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir.1993) (holding that "a justifying reason must be apparent for denial of a motion to amend") (emphasis added).
 
 
 20
 In this case, the district court denied Motorcity's motion to amend based on the court's legal determination that Motorcity's proposed tort claims were barred by the D'Oench doctrine. The futility of a proposed amended complaint can be a justifiable reason for denying leave to amend. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); See Moore, 989 F.2d at 1131. When a district court denies leave to amend a complaint because of futility, we review de novo. Keweenaw Bay Indian Community v. State, 11 F.3d 1341, 1348 (6th Cir.1993); see also Freer v. Dugger, 935 F.2d 213, 216 (11th Cir.1991) ("Regarding the standard of review, conclusions of law by the district court are not binding on appellate courts and this court is free to substitute its judgment for the district court's on matters of law."). Accordingly, we review de novo the district court's determination that Motorcity's tort claims are barred by the D'Oench doctrine and its statutory counterpart, 12 U.S.C. Sec. 1823(e).
 
 C. The D'Oench Doctrine
 
 21
 The common law D'Oench doctrine protects federal deposit insurers, such as the FDIC, against claimants seeking to enforce unwritten, "secret agreements" between the claimants and failed banks. See generally In re Geri Zahn, Inc., 25 F.3d 1539, 1542-43 (11th Cir.1994). We have interpreted the doctrine as follows:
 
 
 22
 In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.
 
 
 23
 Baumann v. Savers Federal Savings and Loan Ass'n, 934 F.2d 1506, 1515 (11th Cir.1991), cert. denied --- U.S. ----, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992).[6]
 
 
 24
 Our circuit recognizes an exception to the D'Oench doctrine for "free standing torts." See In re Geri Zahn, 25 F.3d at 1543. In Vernon v. FDIC, 981 F.2d 1230 (11th Cir.1993) [hereinafter Vernon II ], we held that a bank shareholder was not barred by the D'Oench doctrine from asserting federal and state securities claims and causes of action for common law fraud and misrepresentation against the failed bank: "We simply do not think the D'Oench doctrine operates to bar free standing tort claims that are not related to a specific asset acquired by the FDIC." Id. at 1233-34; accord Vernon v. Resolution Trust Corp., 907 F.2d 1101, 1108 (11th Cir.1990) [hereinafter Vernon I ]. Motorcity argues that the tort claims alleged in its proposed Second Amended Complaint do not derive from the written floor plan financing agreement but from Southeast's conduct in undertaking monthly audits of Motorcity's records and inventory. As such, Motorcity contends that its tort claims fall within the "free standing tort" exception to the D'Oench doctrine.[7]
 
 
 25
 As we have recently noted, however, the free standing tort exception protects only those tort claims that clear a "relatedness" hurdle. In re Geri Zahn, 25 F.3d at 1543-44. The D'Oench doctrine will bar an action, notwithstanding the fact that it sounds in tort rather than in contract, if the claim is "sufficiently intertwined with regular banking transactions, such that exclusion of the alleged 'secret agreement' accords with the underlying policies of D'Oench." Id. at 1543. Stated differently, "the relatedness requirement rests upon the recognition that the D'Oench doctrine does not encompass those free standing torts which do not implicate the records of regular banking transactions." Id. at 1544; see also OPS Shopping Center, Inc., v. FDIC, 992 F.2d 306, 311 (11th Cir.1993) ("[W]e do not believe that the Vernon holding should be extended to exempt from the D'Oench doctrine claims which relate directly to regular banking transactions and which should be reflected in the records of regular banking transactions.").
 
 
 26
 The relatedness requirement directs us to look beyond the form of Motorcity's allegation to the substance of its claim. We note initially that, in every precedent binding upon us that has barred tort claims by application of the D'Oench doctrine, the claimants have alleged some form of fraud in the inducement, misrepresentations that should have been memorialized in the final written agreement, but were not. For example, in Langley v. FDIC, 484 U.S. 86, 89, 108 S.Ct. 396, 400, 98 L.Ed.2d 340 (1987), the defendants attempted to justify nonpayment of a promissory note by charging that the bank had made oral misrepresentations concerning the acreage and mineral interests of land purchased with the borrowed money. The Supreme Court held that the D'Oench doctrine barred such defenses alleging only fraud in the inducement. Id. at 94, 108 S.Ct. at 402. Similarly, in In re Geri Zahn, the claimants sued a bank in tort when they found that the provisions of a written loan agreement varied from terms that they had expected following an oral discussion with the bank. We held that these tort claims did not fall within the free standing tort exception because they stemmed from oral misrepresentations that concerned the terms of the loan itself and that conflicted with the terms of the written loan agreement. In re Geri Zahn, 25 F.3d at 1544 ("The alleged oral agreements were obviously part and parcel of the loan negotiations. As such, they are matters which would normally be reflected in the records of regular banking transactions."). Finally, in OPS Shopping Center, the claimants sued to enforce a letter of credit that was not reflected in bank records. We concluded that "the claims involved in this case relate directly to ordinary banking transactions, i.e., the rights and obligations relating to the issuance of a letter of credit by the bank," and thus upheld the district court's application of the D'Oench doctrine to bar those claims. OPS Shopping Center, 992 F.2d at 310.[8]
 
 
 27
 In contrast, Motorcity's state tort claims seek neither to alter nor to enforce the terms of the floor plan financing agreement. In its proposed Second Amended Complaint, Motorcity alleges two causes of action. First, Motorcity charges Southeast with breach of its fiduciary duty to notify Motorcity of the out-of-trust sales discovered in the course of Southeast's audits. Second, Motorcity maintains that Southeast acted negligently by conducting its audits in an unreasonable and incompetent fashion. These tort claims derive from Florida common law[9]; they do not depend upon any written or oral contract provision between Motorcity and Southeast. Indeed, Motorcity would appear capable of pleading the same two counts had the floor plan financing agreement never included any mention of audits. Thus, whereas the fraud in the inducement claims of Langley, In re Geri Zahn, and OPS Shopping Center can be seen as thinly disguised contract claims, Motorcity's tort claims remain, in substance, tort claims.
 
 
 28
 Additionally, the alleged torts do "not implicate the records of regular banking transactions." In re Geri Zahn, 25 F.3d at 1543. In OPS Shopping Center, we distinguished free standing torts from torts related to regular banking transactions on the basis of where the activities were reflected in bank records.
 
 
 29
 Banking examiners who inspect and evaluate the bank records reasonably expect the records of regular banking transactions to reflect all of the rights and liabilities of the bank regarding such regular banking transactions. By contrast, one would not expect the records of regular banking transactions to record activities unrelated to regular banking transactions. For example, in Vernon I and Vernon II the relevant records would reside in the department of the bank which handled the sale or transfer of the bank's own stock. If the free standing tort claim had related to the discriminatory treatment of an employee, the relevant records would reside in the personnel department of the bank. In the case of an automobile accident in the scope of an employee's employment, there would be no record at all, at least until the investigatory process took shape.
 
 
 30
 OPS Shopping Center, 992 F.2d at 310. The records reflecting Southeast's potential liability in the instant case lie not in the floor plan financing agreement but in the audit reports that Southeast received from its auditors and that Southeast failed to communicate to Motorcity. The remaining "terms" of Southeast's obligation to Motorcity are to be found in Florida's common law. Were Motorcity's tort claims actually contract actions in tort clothing, the source of those claims would have resided in the provisions of the loan agreement or in oral agreements that should have been memorialized in the written document, but were not.
 
 
 31
 Since Motorcity's tort claims do not allege fraud in the inducement or implicate the records of regular banking transactions, we conclude that Motorcity's tort claims are not related to regular banking transactions. Consequently, the claims fall within the free standing tort exception and thus are protected from the bar of the D'Oench doctrine. Because the district court's denial of leave to amend was premised on its erroneous determination that D'Oench barred the proposed tort claims, we reverse the district court's order and remand for further proceedings in view of this opinion.
 
 D. Jurisdiction Revisited
 
 32
 Motorcity's only remaining claims are state causes of action for breach of fiduciary duty and for negligence. Because both of these claims are based on Florida state law,[10] we must consider whether the federal courts retain subject matter jurisdiction over this case as remanded. When the FDIC was substituted as defendant for Southeast, it removed the case to federal district court pursuant to 12 U.S.C. Sec. 1819. Section 1819(b) provides in pertinent part:
 
 
 33
 (2) Federal court jurisdiction
 
 
 34
 (A) In general
 
 
 35
 Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States.
 
 
 36
 (B) Removal
 
 
 37
 Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.
 
 
 38
 (C) Appeal of remand
 
 
 39
 The Corporation may appeal any order of remand entered by any United States district court.
 
 
 40
 (D) State actions
 
 
 41
 ... any action--
 
 
 42
 (i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
 
 
 43
 (ii) which involved only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
 
 
 44
 (iii) in which only the interpretation of the law of such State is necessary,
 
 
 45
 shall not be deemed to arise under the laws of the United States.
 
 
 46
 12 U.S.C. Sec. 1819(b)(2)(A)-(D).
 
 
 47
 As we explained in Lazuka v. FDIC, 931 F.2d 1530 (11th Cir.1991), section 1819 provides the FDIC with an exception to the "well-pleaded complaint" rule:
 
 
 48
 By "deeming" actions to arise under federal law, Congress has eliminated the requirement that the basis for federal jurisdiction appear on the face of the plaintiff's complaint. Accordingly, because the "well-pleaded complaint" rule is inapplicable, the FDIC may raise a federal defense to rebut a plaintiff's showing that only interpretation of state law is necessary to the disposition of the case.
 
 
 49
 Id. at 1535. Thus, Article III's requirement that a case must arise under federal law before federal courts can exercise federal question jurisdiction remains intact, but section 1819 allows the FDIC to satisfy that requirement by alleging a federal question in the FDIC's answer. In the present case, the FDIC invoked federal question jurisdiction not by virtue of section 1819 itself, but by raising two federal question defenses--the D'Oench doctrine and Motorcity's failure to exhaust its administrative remedies under 12 U.S.C. Sec. 1821(d). See id. at 1534-35 & n. 2 (analogizing section 1819 to 28 U.S.C. Sec. 1442(a), as interpreted by the Supreme Court in Mesa v. California, 489 U.S. 121, 136, 109 S.Ct. 959, 968, 103 L.Ed.2d 99 (1989)); id. at 1535 ("By overcoming the 'well-pleaded complaint' rule, section 1819 permits the FDIC to allege federal defenses such as the D'Oench doctrine before a federal court.").
 
 
 50
 Because we have rejected both of the federal question defenses raised by the FDIC, this case returns to federal district court without independent support for federal question jurisdiction. We note, however, that the FDIC has not yet filed an answer to any of Motorcity's complaints.[11] If the FDIC alleges a federal question defense in its answer, then section 1819 grants subject matter jurisdiction to the federal courts, and the burden shifts to Motorcity to show that section 1819(b)(2)(D) mandates a remand to state court. Id. (holding that the language of section 1819 places the burden on the plaintiff to show an exception under section 1819(b)(2)(D)). If the FDIC does not present a federal question defense, then no federal question is presented, and the case must return to Florida state court for resolution of the state tort claims.
 
 III. CONCLUSION
 
 51
 Motorcity appeals from the district court's denial of its motion to amend its complaint for the second time. The district court's decision was based on its legal determination that Motorcity's proposed amendments, adding state tort claims for breach of fiduciary duty and for negligence, were futile. Because neither tort claim is sufficiently intertwined with regular banking transactions, they are free standing torts, not barred by the D'Oench doctrine. For these reasons, we VACATE the decision of the district court and REMAND the case for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Motorcity made the following affirmative covenant to Southeast:
 [Motorcity] will keep and maintain full and accurate accounts and records of its operations ... and will permit [Southeast] and its designated officers, employees, agents and representatives, to have access thereto and to make examination thereof at all reasonable times, to make audits, and to inspect and otherwise check its properties, real, personal and mixed.
 R1-35 Ex.B p 5.7.
 
 
 [2]
 The D'Oench doctrine and its statutory counterpart, 12 U.S.C. Sec. 1823(e), are discussed in Part II.B, infra
 
 
 [3]
 See also 12 U.S.C. Sec. 1821(d)(5)(C)(i) ("[With certain exceptions] claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final.")
 
 
 [4]
 In so holding, we are in agreement with all of our sister circuits that have considered the issue. See Carney v. RTC, 19 F.3d 950, 955 (5th Cir.1994); Brady Dev. Co. v. RTC, 14 F.3d 998, 1005-06 (4th Cir.1994); Bueford v. RTC, 991 F.2d 481, 484 (8th Cir.1993); Henderson v. Bank of New England, 986 F.2d 319, 320-21 (9th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 559, 126 L.Ed.2d 459 (1993); Marquis v. FDIC, 965 F.2d 1148, 1151-52 (1st Cir.1992); Office & Professional Employees Int'l Union, Local 2 v. FDIC, 962 F.2d 63, 66 (D.C.Cir.1992); RTC v. Elman, 949 F.2d 624, 627 (2d Cir.1991); RTC v. Mustang Partners, 946 F.2d 103, 106 (10th Cir.1991); Rosa v. RTC, 938 F.2d 383, 391 (3d Cir.), cert. denied --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991)
 
 
 [5]
 Factual and legal allegations concerning Southeast's negligence and its duty to inform appear several times in Motorcity's Statement of Claim:
 When conducting the floor plan audits, Southeast had an absolute duty to inform Motorcity of any out-of-trust sales or irregularities in connection with sales that could result in out-of-trust situations. At all material times throughout the operations of Motorcity, David Hess relied on Southeast Bank in conducting appropriate audits and notifying Motorcity of any out-of-trust sale problems.
 ....
 Feigenbaum, the bank representative has admitted, that the audits were conducted in a negligent fashion.... Feigenbaum has admitted under oath that said audit system was flawed and negligent, that he undertook an obligation because of the contract and his commitment to Motorcity and Dr. Hess to immediately notify him if there were indeed out of trust sales.... Moreover, the Southeast representative has admitted that these negligent audits were conducted with other dealers....
 ....
 Southeast undertook those audits pursuant to the written agreement ... and breached its written, legal, ethical and moral duty to inform Motorcity and Hess of the out-of-trust situation.
 SR1-69 Ex.A pp 17, 23, 24 (emphasis added).
 
 
 [6]
 12 U.S.C. Sec. 1823(e), which codified the D'Oench doctrine, provides:
 No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
 (1) is in writing,
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
 12 U.S.C. Sec. 1823(e).
 
 
 [7]
 We reject without discussion Motorcity's claim that the D'Oench doctrine and 12 U.S.C. Sec. 1823(e) are inapplicable because Motorcity repaid its loan to Southeast before bringing suit. See OPS Shopping Center, Inc., v. FDIC, 992 F.2d 306, 309 (11th Cir.1993) ("We can discern nothing in the purpose of the D'Oench doctrine which would support appellant's proposed limitation of the doctrine [to a specific asset of a bank that has been acquired by the FDIC]. Moreover, every circuit court of appeals which has expressly addressed this argument has rejected it.")
 
 
 [8]
 Moreover, when other circuits have barred tort claims by application of the D'Oench doctrine, the tort claims have uniformly involved fraud in the inducement. See FDIC v. Bathgate, 27 F.3d 850, 868-69 (3d Cir.1994) (bank's warranties made in an unrecorded letter); McCullough v. FDIC, 987 F.2d 870, 873 (1st Cir.1993) (bank's failure to disclose order requiring removal of hazardous waste from property); Castleglen, Inc. v. RTC, 984 F.2d 1571 (10th Cir.1993) (misrepresentations made by bank during negotiations for sale of real estate project); In re 604 Columbus Ave. Realty Trust, 968 F.2d 1332, 1345 (1st Cir.1992) (secret kickback scheme in which bank entered into loan in order to extract improper payments); Oliver v. RTC, 955 F.2d 583, 586 (8th Cir.1992) (breach of fiduciary duty based on violation of oral side agreements regarding loan); Timberland Design, Inc. v. First Serv. Bank for Sav., 932 F.2d 46, 47, 50 (1st Cir.1991) (bank's secret oral loan commitment). The reasoning in these cases is best summarized by the McCullough court:
 The holding in Langley depends upon and flows from the following observation: as a matter of contractual analysis, a contractually bound party's attempt to avoid a contractual obligation and/or to seek damages through a claim of misrepresentation is nothing more than a challenge to the truthfulness of a warranty made by another party to the contract, and a concomitant claim that the truthfulness of that warranty was a condition of the first party's performance.
 McCullough, 987 F.2d at 873.
 
 
 [9]
 See Barnett Bank of West Florida v. Hooper, 498 So.2d 923, 925 (Fla.1986) (holding that, under certain conditions, a bank assumes a duty to disclose facts material to a transaction); Saglio v. Chrysler First Commercial Corp., 839 F.Supp. 830, 834 (M.D.Fla.1993) ("Although the law does not impose a duty upon [a lender] to reasonably perform inventory checks for [a guarantor's] benefit, liability for misfeasance can lie where a party voluntarily assumes a duty.")
 
 
 [10]
 See supra note 9
 
 
 [11]
 Although the FDIC moved to file an amended answer after its substitution as defendant in this case, R1-30, the district court denied the motion as moot after the court granted Motorcity's motion to amend its Original Complaint. R1-36. Similarly, following our decision, the FDIC will have an opportunity to respond to Motorcity's Second Amended Complaint. See Fed.R.Civ.P. 15(a) ("A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.")