[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12015
_____

D.C. Docket No. 4:11-cv-00147-BAE-GRS


STEPHANIE LINDLEY,

Plaintiff-Appellant,

versus

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver of the business and property of Darby Bank & Trust Company, et al.,
DRAYPROP, LLC, et al.,

Defendants-Appellees.


_____

No. 12-12290
_____

D.C. Docket No.  4:11-cv-00143-WTM-GRS

ROBERT M. OSBORNE, JR.,
DONNA OSBORNE, et al.,

Plaintiffs-Appellants-
Cross-Appellees,

versus

FEDERAL DEPOSIT INSURANCE CORPORATION
As receiver of the business and property of Darby Bank & Trust Company, et al.,

Defendants-Appellees,

DRAYPROP, LLC,
DRAYPARK, LLC, et al.,

Defendants-Appellees
Cross-Appellants.

_____

No. 12-12292
_____

D.C. Docket No.  4:11-cv-00144-WTM-GRS

DON REINKE,
RESTORE SAVANNAH DEVELOPEMENT, LLC,

Plaintiffs-Appellants
Cross Appellees,

versus

DARBY BANK & TRUST CO., et al.,

Defendants-Appellees
Cross Appellees,

DRAYPROP, LLC,
DRAYPARK, LLC, et al.,

Defendants-Appellees
Cross Appellants.

2

_____

No. 12-12297
_____

D.C. Docket No.  4:11-cv-00172-WTM-GRS

JIM HUNT,
trading as the Hunt Club Clothiers,

Plaintiff-Appellant
Cross Appellee,

versus

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver of the business and property of Darby Bank & Trust Company, et al.,

Defendants
Cross Appellees,

DRAYPROP, LLC,
MICHAEL BROWN, et al.,

Defendants-Appellees
Cross Appellants.

_____

No. 12-12299
_____

D.C. Docket No.  4:11-cv-00146-WTM-GRS

WARREN LOKEY,

Plaintiff-Appellant
Cross Appellee,

3

versus

FEDERAL DEPOSIT INSURANCE CORPORATION,
As receiver of the business and property of Darby Bank & Trust Co.,

Defendant-Appellee,

DRAYPROP, LLC,
DRAYPARK, LLC, et al.,

Defendants-Appellees-
Cross Appellants.

————————————————

No. 12-12359
————————————————

D.C. Docket No.  4:11-cv-00171-WTM-GRS

HARRIS BAKING COMPANY,
formerly known as Regency Baking Company,

Plaintiff-Appellant
Cross Appellee,

versus

DARBY BANK & TRUST CO., et al.,

Defendants-Appellees-
Cross Appellee,

DRAYPROP, LLC,
MICHAEL BROWN, et al.,

Defendants-Appellees-
Cross Appellants.

4

_____

Appeals from the United States District Court
for the Southern District of Georgia
_____

(August 16, 2013)

Before MARTIN and FAY, Circuit Judges, and GOLDBERG,[*] Judge.

MARTIN, Circuit Judge:

This is a consolidated appeal of six orders from the Southern District of Georgia denying motions for remand to state court, granting summary judgment to the FDIC on federal claims, and refusing to exercise supplementary jurisdiction over remaining state law claims against other defendants. After careful review, and having had the benefit of oral argument, we affirm the District Court's denial of remand and award of summary judgment to the FDIC. However, we reverse the District Court's dismissal of the remaining claims against the non-FDIC defendants.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The original plaintiffs in this action are various parties (Tenants) that independently leased or purchased floor space in the Drayton Tower building in

_____

[*] Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

Savannah, Georgia.[1]  When funding for renovation of Drayton Tower dried up, the Tenants each brought their own lawsuit against Darby Bank & Trust (Darby Bank)[2] and various real estate developers and contractors—including cross-appellants Drayprop LLC, Draypark LLC, Michael Brown, Reuben Croll, and Marley Management, Inc. (collectively, the Drayprop Defendants)[3]—in the State Court of Chatham County, Georgia.  These actions alleged negligent misrepresentation, fraud, breach of contract, and breach of warranty.  In November 2010, the Georgia Department of Banking and Finance closed Darby Bank, took possession of it, and appointed the FDIC as receiver.

Against Darby Bank (now the FDIC), the Tenants alleged fraud and negligent misrepresentation based on statements made about when funds would be made available for renovation of Drayton Tower.  The Tenants point to a letter dated May 20, 2005, written by Darby Bank Vice President Salita Hill on bank letterhead, and addressed to the Drayton Tower Condominium Association (Hill Letter).  Among other things, the Hill Letter says that "for the refurbishing of

---

[1]  The Tenants are: Stephanie Lindley (appellant in Appeal No. 12-12015); Robert M. Osborne, Jr., et al. (cross-appellants in Appeal No. 12-12290); Don Reinke, et al. (cross-appellants in Appeal No. 12-12292); Jim Hunt (cross-appellant in Appeal No. 12-12297); Warren Lokey (cross-appellant in Appeal No. 12-12299); and Harris Baking Company (cross-appellant in Appeal No. 12-12359).

[2]  This is not the first time we have grappled with legal issues stemming from Darby Bank's failure.  E.g., FDIC v. N. Savannah Props., LLC, 686 F.3d 1254 (11th Cir. 2012).

[3]  The Drayprop Defendants are appellants in all of these appeals other than Appeal No. 12-12015.

6

Drayton Towers . . . . Darby Bank & Trust Company will guarantee the availability of funds up to the amount of $1,500,000.00." The Hill Letter was not counter-signed by any party. Neither was it presented to, or approved by, Darby Bank's board of directors (or anybody else at Darby Bank, for that matter). The Tenants never confirmed the veracity of the Hill Letter with anyone at Darby Bank, nor did they enter into any formal agreements with Darby Bank. Instead, their "allegations against Darby Bank are predicated [solely] upon [the Hill Letter]."

Against the Drayprop Defendants, the Tenants alleged fraud and negligent misrepresentation based on statements about when renovations to Drayton Tower would be finished, and breach of contract based on the Drayprop Defendants' failure to finish the work by the dates promised.

After Darby Bank's failure, the FDIC was substituted as a party for Darby Bank in each of the Tenants' lawsuits. The FDIC then removed each case to the U.S. District Court under 12 U.S.C. § 1819(b)(2)(B). The Tenants each moved for remand, citing a limited exception to the FDIC's removal authority for cases in which "only the interpretation of the law of [the] State is necessary" to the disposition. 12 U.S.C. § 1819(b)(2)(D). The FDIC opposed the motions for remand, and moved for summary judgment in each case, arguing that beyond the state law issues presented, federal law compelled dismissal under §§ 1823(e) and

7

1821(d)(9)(A), and the D'Oench Doctrine.[4]  See D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S. Ct. 676 (1942).

In each case, the District Court agreed with the FDIC and, over the Tenants' objections, denied the motions for remand and dismissed all claims against the FDIC.  Then, assuming that it lacked original jurisdiction over the Tenants' pendent state law claims against the Drayprop Defendants, the District Court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), and dismissed these claims as well.  These appeals followed.  After each serving individual notices of appeal, the Tenants filed a "Joint Motion to Consolidate Appeals," which was granted.  The Tenants' appeals are now consolidated "for all purposes."

## II.  DISCUSSION

The Tenants raise two issues on appeal.  First, they argue that the District Court was wrong to deny their motions for remand to Georgia state court on the ground that it lacked jurisdiction over their state law claims.  Second, they say that even if the District Court had jurisdiction over their claims against the FDIC, it was wrong for a number of reasons when it granted the FDIC's motions for summary judgment.  In their cross-appeal, the Drayprop Defendants raise a third issue.  The

---

[4]  "The D'Oench decision is the origin of the rule that, in a suit against the maker of a note by a federal deposit insurer, the maker is not allowed to raise a secret agreement between the maker and the payee bank as a defense."  Bufman Org. v. FDIC, 82 F.3d 1020, 1023 (11th Cir. 1996).

8

Drayprop Defendants now argue that after granting summary judgment to the FDIC, the District Court should not have dismissed the pendent state law claims. They point to § 1819(b)(2)(A)—the FDIC jurisdictional statute—to say that the District Court "ha[d] original jurisdiction over [the remaining] state law claims against non-FDIC defendants [even] after the FDIC [was] dismissed from the case."

We address each argument in turn.  "We review de novo whether a district court had federal subject matter jurisdiction following removal."  Castleberry v. Goldome Credit Corp., 408 F.3d 773, 780–81 (11th Cir. 2005).  We also review a District Court's grant of summary judgment de novo, considering the evidence in the light most favorable to the nonmoving party.  Iberiabank v. Beneva 41-I, LLC, 701 F.3d 916, 921 (11th Cir. 2012).  "Summary judgment is appropriate when there is no genuine issue of material fact and the evidence compels judgment as a matter of law in favor of the moving party."  Id.; Fed. R. Civ. P. 56(a).  Finally, we review questions of subject matter jurisdiction and statutory interpretation de novo. Holston Invs., Inc. B.V.I. v. LanLogistics Corp., 677 F.3d 1068, 1070 (11th Cir. 2012) ("Whether a court has subject-matter jurisdiction to hear a matter is a question of law that we review de novo."), cert. dismissed, 133 S. Ct. 499 (2012);

Rine v. Imagitas, Inc., 590 F.3d 1215, 1222 (11th Cir. 2009) ("The interpretation of a statute is a question of law subject to de novo review.").[5]

## A. THE DISTRICT COURT'S DENIAL OF THE TENANTS' REQUESTS FOR REMAND

The Tenants first argue that the District Court erred in denying their motions to remand because the District Court lacked jurisdiction over their claims. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987). The corollary to this rule is that absent diversity of citizenship, the only basis for removal is "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. A case that has been removed to federal court "shall be remanded" "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); see also Gravitt v. Sw. Bell Tel. Co., 430 U.S. 723, 723–24, 97 S. Ct. 1439, 1440 (1977) (per curiam).

---

[5] Typically a District Court's decision not to exercise supplemental jurisdiction over pendent state law claims is reviewed for abuse of discretion. Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1351 n.4 (11th Cir. 1998). However, "[t]o the extent that the court's decision was based on conclusions of law, we review the legal conclusions de novo." Id. Here, the District Court expressly declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), which provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Thus, although the District Court did not expressly say so, once it had dismissed the FDIC, it necessarily determined that it lacked original jurisdiction over the Tenants' remaining claims against the Drayprop Defendants. This was a legal determination warranting de novo review on appeal. Holston Invs., 677 F.3d at 1070.

Here, however, statutes establishing jurisdiction for FDIC matters trump the general rules governing federal subject matter jurisdiction and removal. Indeed, "special provisions" define a federal court's jurisdiction to hear cases involving the FDIC. Castleberry, 408 F.3d at 781. First, "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A). Second, with one limited exception, "the [FDIC] may . . . remove any action, suit, or proceeding from a State court to the appropriate United States district court." Id. § 1819(b)(2)(B) (emphasis added). In fact, § 1819(b)(2)'s grant of jurisdiction is so robust that it "creates a rebuttable presumption of federal question jurisdiction to support removal in cases brought against the FDIC, and overcomes the well-pleaded complaint rule by permitting the FDIC to assert a federal question in its answer." Lazuka v. FDIC, 931 F.2d 1530, 1532 (11th Cir. 1991) (quotation marks omitted), superseded by statute on other grounds as recognized in FDIC v. S & I 85-1, Ltd., 22 F.3d 1070, 1073–74 (11th Cir. 1994).

The sole exception to the FDIC's authority to remove a case once it becomes a party is triggered when: (1) a state authority appointed the FDIC as receiver; (2) the litigation involves only the pre-closing rights against the failed institution; and (3) only state law need be interpreted. 12 U.S.C. § 1819(b)(2)(D). To defeat removal under this "state law exception," "each of these three prongs must be

11

established." Castleberry, 408 F.3d at 785. Also, "[t]he FDIC may raise a federal defense to rebut a plaintiff's showing that only interpretation of state law is necessary to the disposition of the case." Lazuka, 931 F.2d at 1535.

In arguing that the District Court should have remanded their claims to state court, the Tenants' invoke the state law exception. Specifically, they say "this action involves . . . tort claims against Darby [Bank] outside the scope of [federal law]." Alternatively, they argue that their cases should have been remanded because the FDIC has failed to raise a federal defense that is "colorable for decision and is not meritless." See Diaz v. McAllen State Bank, 975 F.2d 1145, 1149–50 (5th Cir. 1992) (holding that to prevent remand to state court "the FDIC must assert a defense that raises colorable issues of federal law"). We are not persuaded by either of the Tenants' arguments. As we will explain, the FDIC has asserted a federal defense that is not only colorable, it is dispositive. Therefore, the District Court was right to deny the Tenants' motions for remand. See Castleberry, 408 F.3d at 785; Lazuka, 931 F.2d at 1535.

### B. THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT TO THE FDIC

The FDIC moved for summary judgment on the basis of D'Oench, Duhme & Company v. FDIC, 315 U.S. 447, 62 S. Ct. 676 (1942), and 12 U.S.C. §§ 1823(e) and 1821(d)(9)(A). The FDIC sought summary judgment, saying that

the Tenants' claims were not based upon a fully executed, properly documented agreement that constituted an official record of Darby Bank, and therefore necessarily fail under federal law.

In D'Oench, the Supreme Court opined that "in litigation between a bank customer and the FDIC, as successor in interest to a bank, the customer may not rely on agreements outside the documents contained in the bank's records to defeat a claim of the FDIC."  Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1514–15 (11th Cir. 1991) (citing D'Oench, 315 U.S. at 459, 62 S. Ct. at 680).  The D'Oench case generated the so-called D'Oench Doctrine, which is simply a rule that:

> In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

Id. at 1515.

The D'Oench Doctrine is codified at 12 U.S.C. § 1823(e).  See Twin Constr., Inc. v. Boca Raton, Inc., 925 F.2d 378, 382 (11th Cir. 1991) ("[C]ourts have found the aims of section 1823(e) and D'Oench identical and thus have construed defenses premised upon section 1823(e) and D'Oench in tandem.").  Section 1823(e) provides, in part:

> In general

13

No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . shall be valid against the [FDIC] unless such agreement—

(A) is in writing,

(B) was executed[6] by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1) (emphasis added).  Section 1823(e) gets additional strength from § 1821(d)(9)(A) which provides, in part, that "any agreement which does not meet the requirements set forth in section 1823(e) . . . shall not form the basis of, or substantially comprise, a claim against the [FDIC]."

A "narrow exception" to § 1823(e) and D'Oench exists when the plaintiff asserts "free standing tort claims."  In re Geri Zahn, Inc., 25 F.3d 1539, 1543 (11th Cir. 1994) (quotation marks omitted).  The Tenants argue, among other things, that theirs are free standing tort claims.  To determine if a tort claim is "free standing," "the key inquiry is one of relatedness."  Id.  "One obvious indicia of relatedness

---

6  In the context of § 1823(e), "executed" means "signed the agreement."  See Twin Constr., 925 F.2d at 384 (quotation marks omitted).

14

[is] whether the . . . representations were of matters that would generally be reflected in the records of ordinary banking transactions." Id. at 1543–44. In other words, a tort claim is not free standing if it is "sufficiently intertwined with regular banking transactions, such that exclusion of the alleged secret agreement accords with the underlying policies of D'Oench." Id. at 1543 (quotation marks omitted); see also id. at 1544 ("[T]he relatedness requirement rests upon the recognition that the D'Oench doctrine does not encompass those free standing torts which do not implicate the records of regular banking transactions." (emphasis added)).

The Tenants make three arguments for why § 1823(e) and D'Oench do not bar their claims against the FDIC. First, they argue that their claims fall outside the scope of § 1823(e) and D'Oench because they "lack the potential to diminish or defeat the interest of the FDIC in [Darby Bank]," to the extent that liability for their claims would be covered by "a[] large insurance policy." Alternatively, they argue theirs are free standing torts outside the scope of D'Oench. This is so, they say, because the basis of their complaints—the Hill Letter—was "not [written] in connection with any regular banking transaction, but [rather] as part of an effort to induce potential buyers to purchase property in the Drayton Tower building from the developer and its agents." Finally, they argue that summary judgment was premature because discovery may yet produce additional "documents [that] would

15

meet the requirements of D'Oench." For reasons we will discuss, each of the

Tenants' arguments fails.

### 1. The Tenants' Claims Tend to Diminish the FDIC's Interest in Darby Bank

First, the Tenants offer no authority to support the idea that their claims fall

outside D'Oench's scope because Darby Bank's insurance policy protects the

FDIC from any diminution in Darby Bank's value. As capably explained by the

District Court:

> Congress's use of the word "tends" [in § 1823(e)] demonstrates the needlessness of an exact determination of whether the FDIC[]'s interest in a particular asset is diminished or defeated in each case. Enforcement of a promise to make $1,500,000 available would certainly "tend[ ] to diminish or defeat the interest" of the FDIC[], regardless of whether the FDIC[] would see an actual diminution in value of its assets in this case. Because a tendency to defeat or diminish is all that is required for application of the statute, a precise computation of the FDIC[]'s net loss or gain in a particular case is unnecessary.

Lindley v. FDIC, No. 4:11-cv-147, slip op. at 4 (S.D. Ga. Jan. 4, 2012). Thus, the

Tenants do not carry the day with their argument that D'Oench does not apply to

their case because Darby Bank's insurance policy protects the FDIC's interest.

### 2. The Tenants Have Not Alleged Free-Standing Torts

Next, the Tenants have failed to allege "free standing tort[s]" because their

claims obviously "implicate the records of regular banking transactions." See In re

Geri Zahn, 25 F.3d at 1544. The Hill Letter's promise to make funds available is

precisely the sort of agreement that constitutes a "regular banking transaction[]," as

16

opposed to a "free standing tort."  See OPS Shopping Ctr., Inc. v. FDIC., 992 F.2d 306, 310–11 (11th Cir. 1993).  Thus, claims based on the Hill Letter must satisfy the requirements of § 1823(e) and D'Oench if the Tenants are to prevail.  See id. (holding that an extension of credit through a writing not contained in bank records was related to "regular banking transactions" and subject to D'Oench); see also In re Geri Zahn, 25 F.3d at 1544 (holding that terms and conditions established during "loan negotiations" were related to "regular banking transactions"); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 593–94 (11th Cir. 1995) (holding that an agreement to loan "additional monies" related to "regular banking transactions"); Motorcity of Jacksonville, Ltd. v. Se. Bank N.A., 83 F.3d 1317, 1338 (11th Cir. 1996) (stating that "negotiations and representations . . . intimately related" to lending are at "the very core of the D'Oench doctrine"), vacated on other grounds by Hess v. FDIC, 519 U.S. 1087, 117 S. Ct. 760 (1997).

In contrast to their claims that the Hill Letter reflects regular banking transactions, the Tenants point to Vernon v. Resolution Trust Corporation (Vernon I), 907 F.2d 1101 (11th Cir. 1990), and its companion case Vernon v. FDIC (Vernon II), 981 F.2d 1230 (11th Cir. 1993), in support of the opposite proposition—that they alleged free standing tort claims.  In the Vernon cases we addressed the plaintiffs' ability to recover against federal receivers (including the FDIC) in the context of claims that a failed savings and loan institution

17

fraudulently induced the plaintiffs to purchase its stock.  See Vernon I, 907 F.2d at 1103; Vernon II, 981 F.2d at 1231.  In these circumstances—where the failed savings and loan profited from the alleged fraud, the plaintiffs were saddled with worthless stock certificates, and the alleged fraud would not be expected to show up in the records of regular banking transactions—we held that D'Oench did not bar the plaintiffs' claims.  We said "[w]e simply do not think the D'Oench doctrine operates to bar free standing tort claims that are not related to a specific asset acquired by the FDIC."  Vernon II, 981 F.2d at 1233–34; see also Vernon I, 907 F.2d at 1107–08 & n.6.

> Our Court has since elaborated on our rationale in the Vernon cases:

> The tort claims in Vernon II involved alleged violations of securities laws and related claims arising from the claimants' purchase of preferred stock and warrants to purchase common stock in the failed institution itself.  Because "the relevant records would reside in the department of the bank which handled the sale or transfer of the bank's own stock," and would not appear among the records of "regular banking transactions," the claims in Vernon II constituted free standing torts, not barred by the D'Oench doctrine.  Thus, the court drew a distinction: on the one hand, typical claims like employment discrimination and automobile accidents would be free standing torts not barred by D'Oench; on the other hand, those claims relating to "ordinary banking transactions" and imposing obligations on the bank with respect thereto—obligations that would ordinarily be reflected in the records of banking transactions—would be D'Oench-barred unless thus recorded.

Motorcity of Jacksonville, 83 F.3d at 1337–38 (quoting OPS Shopping Ctr., 992 F.2d at 310–11).

18

Here, we are not talking about claims related to "automobile accidents," "employment discrimination," "violations of securities laws," or stock sales. See id. Instead, we have allegations about a promise to extend credit—the quintessential "ordinary banking transaction[]"—that, if true, would "be reflect[ed] in the records of banking transactions." Id. Thus, D'Oench and § 1823(e) each apply, and the Tenants' claims are barred unless they satisfy each prong of the § 1823(e) inquiry. This, they cannot do.

### 3. No Factual Disputes Remain to be Resolved

Contrary to the Tenants' argument, there are no remaining disputes about facts which would impede the disposition of their claims against the FDIC. Before the District Court, the Tenants admitted: (1) their "allegations against Darby Bank are predicated [solely] upon [the Hill Letter]"; and (2) "[t]he Hill Letter was not reviewed or approved by anyone else at Darby Bank prior to Ms. Hill's issuance of the letter." It is also obvious from the face of the Hill Letter that none of the Tenants were party to its "execution." Thus, the Tenants cannot rely on the Hill Letter as a basis for their claims. At a minimum, it fails two prongs of the § 1823(e) test: specifically, it was not "executed [i.e. signed] by the depository institution and [the] person claiming an adverse interest thereunder." Neither was

19

it "<u>approved</u> by the board of directors of the depository institution or its loan committee."  12 U.S.C. § 1823(e) (emphasis added); <u>id.</u> § 1821(d)(9)(A).[7]

In sum, the District Court properly decided that <u>D'Oench</u> and § 1823(e) applied to the Tenants' claims against the FDIC because their claims "relat[ed] to ordinary banking transactions and . . . would ordinarily be reflected in the records of banking transactions."  <u>Motorcity of Jacksonville</u>, 83 F.3d at 1337–38 (quotation marks omitted).  Thus, because the Hill Letter failed to satisfy the requirements of § 1823(e), and the Tenants' failed to provide any other basis for their claims against Darby Bank, the District Court correctly entered summary judgment in favor of the FDIC.

## C. THE DISTRICT COURT'S DISMISSAL OF THE REMAINING CLAIMS AGAINST THE NON-FDIC DEFENDANTS

Upon dismissal of the Tenants' claims against the FDIC, the District Court went on to dismiss their remaining state law claims against the Drayprop Defendants.  The Court assumed that it lacked original jurisdiction over these claims, and "careful consideration" yielded "no reason to exercise . . . supplemental jurisdiction" under 28 U.S.C. § 1367(c)(3).  The final issue we must decide is whether the District Court was right to dismiss the Tenants' remaining state law claims.

---

[7]  Indeed, the Tenants also acknowledged at oral argument that their claims failed to satisfy certain prongs of the § 1823(e) analysis—specifically prong three (that the Hill Letter was approved by Darby Bank's board of directors) and prong four (that the Hill Letter was among Darby Bank's official records).  <u>See</u> 12 U.S.C. § 1823(e).

20

The Drayprop Defendants argue that the District Court should not have dismissed the Tenants' remaining claims because under 12 U.S.C. § 1819(b)(2)(A) the District Court had original jurisdiction over all of the Tenants' claims, which necessarily persisted after their claims against the FDIC were dismissed. This is so, the Drayprop Defendants contend, because federal courts have original jurisdiction over all civil actions "arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331 (emphasis added), and because "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States," 12 U.S.C. § 1819(b)(2)(A) (emphasis added). Thus, they argue that a District Court has original jurisdiction over state law claims against non-FDIC defendants once the FDIC is involved in the case, and this jurisdiction cannot be divested even if the claims against the FDIC are later dismissed.

Whether a federal court has jurisdiction over a pendent state law claim that the FDIC has removed to the District Court when the FDIC is later dismissed from the case is an issue of first impression in our Circuit. Ultimately, this question turns on the meaning of § 1819(b)(2)(A), and, in particular, the term "is a party" as used in that statute. See id.

"As with any question of statutory interpretation, we begin by examining the text of the statute to determine whether its meaning is clear." Harry v. Marchant,

291 F.3d 767, 770 (11th Cir. 2002).  "We do this because we presume that Congress said what it meant and meant what it said."  Id. (quotation marks omitted).  "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent."  Med. Transp. Mgmt. Corp. v. Comm'r of IRS, 506 F.3d 1364, 1368 (11th Cir. 2007) (quotation marks omitted).  However, "[w]e will . . . look beyond the plain language of a statute at extrinsic materials to determine the congressional intent if . . . the statute's language is ambiguous."  Harrison v. Benchmark Elecs. Huntsville, Inc., 593 F.3d 1206, 1212 (11th Cir. 2010) (quotation marks omitted).  "Statutory language is ambiguous if it is susceptible to more than one reasonable interpretation."  Med. Transp. Mgmt. Corp., 506 F.3d at 1368.  Where there can be more than one reasonable interpretation, "the courts are left to determine [the statute's] meaning by looking to the legislative history and employing the [other] canons of statutory construction."  U.S. Steel Mining Co. v. Dir., OWCP, No. 11-14468, ___ F.3d ___, ___, 2013 WL 3213132, at *6 (11th Cir. June 27, 2013).  "Congress is presumed to know the content of existing, relevant law, and . . . where Congress knows how to say something but chooses not to, its silence is controlling."  Griffith v. United States, 206 F.3d 1389, 1394 (11th Cir. 2000) (quotation marks, citations, and alterations omitted).

Section 1819(b)(2)(A) reads, in full, as follows: "Except as provided in subparagraph (D),[8] all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States."  12 U.S.C. § 1819(b)(2)(A).  Obviously, this section confers jurisdiction in very broad terms.  See Lazuka, 931 F.2d at 1535; see also N. Savannah Props., 686 F.3d at 1258.  But it is not as clear as it is broad.  Indeed, there are at least two reasonable interpretations for the use of "is a party" in this section.  On one hand, "is a party" might mean that the FDIC need only be a party when the suit is filed to create jurisdiction over all claims, including pendent state law claims against non-FDIC defendants.  Alternatively, "is a party" might mean that the FDIC must be a party throughout the proceeding to maintain jurisdiction over pendent state law claims.  Thus, § 1819(b)(2)(A) is ambiguous on this point. See Med. Transp. Mgmt. Corp., 506 F.3d at 1368.  It is also true that other provisions in § 1819, together with related sections, are not particularly helpful, so we must look to extrinsic materials to help determine its meaning.  See Harrison, 593 F.3d at 1212.

Turning next to the legislative history, U.S. Steel Mining Co., 2013 WL 3213132, at *17, it is significant that § 1819(b)(2)(A) became law as a part of the

---

[8]  Section 1819(b)(2)(D) outlines the state law exception to the federal courts' jurisdiction over causes of action involving the FDIC which, for reasons already explained, does not apply here. See 12 U.S.C. § 1819(b)(2)(D).

Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). See Pub. L. No. 101–73, 103 Stat. 183 (1989). FIRREA was enacted "[i]n the wake [of] a mounting crisis in the banking and thrift industry," and was sweeping in its scope. Motorcity of Jacksonville, 83 F.3d at 1326–27. Among its stated purposes was "[t]o curtail investments and other activities of savings associations that pose unacceptable risks to the Federal deposit insurance funds," and "[t]o strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors." Pub. L. No. 101–73, § 101(3), (10). Section 1819(b)(2) seeks to accomplish these goals by providing a federal forum for FDIC enforcement actions, as well as actions brought by non-FDIC plaintiffs. See 12 U.S.C. § 1819(b); Castleberry, 408 F.3d at 788 ("[T]he terms of 12 U.S.C. § 1819 evince a clear congressional intent to provide a federal forum when the FDIC is made a party to state court litigation."). These purposes are better served if § 1819(b)(2)(A)'s use of "is a party" means that the FDIC need only be a party at the time the case is filed in order to establish jurisdiction over all pendent claims. If we look to the time of filing to determine jurisdiction over pendent claims, non-FDIC plaintiffs may continue uninterrupted in their claims against non-FDIC defendants, even after the FDIC is dismissed from the case. See Fed. Sav. & Loan Ins. Corp. v. Griffin, 935 F.2d 691, 696 (5th Cir. 1991) ("Congress enacted FIRREA to correct any possible jurisdictional defects existing

24

at the time of removal; the fact that . . . [the] FDIC is [not] a party at the time of appeal cannot defeat this intent."); cf. FDIC v. Four Star Holding Co., 178 F.3d 97, 100 (2d Cir. 1999) (recognizing that a contrary rule "could well have the effect of deterring normal business transactions during the pendency of what might be lengthy litigation, and could also deter transactions by FDIC that presumably are in the public interest" (quotation marks and citations omitted)); Mizuna, Ltd. v. Crossland Fed. Sav. Bank, 90 F.3d 650, 657 (2d Cir. 1996) ("In a general way, the jurisdictional grant in FIRREA enhances the effectiveness and uniformity of proceedings in which the FDIC exercises the sweeping powers conferred on it by the Act.").

An interpretation that establishes jurisdiction over pendent state law claims at the time of filing is also consistent with other "canons of statutory construction." U.S. Steel Mining Co., 2013 WL 3213132, at *17. "Congress is presumed to know the content of existing, relevant law." Griffith, 206 F.3d at 1394. Again, "where Congress knows how to say something but chooses not to, its silence is controlling." Id. (quotation marks and alterations omitted). Our earliest jurisprudence provided "that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events." Mullan v. Torrance, 22 U.S. (9 Wheat.) 537, 539 (1824); see also Dole Food Co. v. Patrickson, 538 U.S. 468, 478, 123 S. Ct. 1655, 1662

25

(2003) (same).  The time-of-filing doctrine also applies to removal.  Ehlen Floor

Covering, Inc. v. Lamb, 660 F.3d 1283, 1287 (11th Cir. 2011).  With the time-of-

filing rule's "pedigree of almost two centuries," Grupo Dataflux v. Atlas Global

Grp., L.P., 541 U.S. 567, 582, 124 S. Ct. 1920, 1930 (2004), we cannot doubt that

members of Congress knew of its existence when they passed FIRREA.  Neither

do we doubt that if Congress intended to reject the time-of-filing rule where the

FDIC is concerned, it would have said so.  Thus relevant canons of construction

support an interpretation of § 1819(b)(2)(A) that creates federal jurisdiction over

pendent state law claims at the time the FDIC becomes involved in the litigation.

See Griffith, 206 F.3d at 1394; see also Adair v. Lease Partners, Inc., 587 F.3d 238,

245 (5th Cir. 2009) (citing time-of-filing rule for recognizing federal jurisdiction

over pendent state law claims after the dismissal of the FDIC from the case); Four

Star Holding, 178 F.3d at 100–01 (same); Griffin, 935 F.2d at 696 (same).  But see

New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d

1492, 1495, 1503–04 (3d Cir. 1996) (rejecting "the invocation of the 'black letter

rule' that jurisdiction is only determined at the time of the filing of the complaint"

when addressing a similar jurisdictional issue presented by FIRREA).

Finally, this conclusion is consistent with what this Court has already said

about § 1819(b)(2)(A).  See N. Savannah Props., 686 F.3d at 1258 ("Federal-

question jurisdiction generally exists whenever the FDIC is a party to litigation.");

Castleberry, 408 F.3d at 788 ("[T]he terms of 12 U.S.C. § 1819 evince a clear congressional intent to provide a federal forum when the FDIC is made a party to state court litigation."); Lazuka, 931 F.2d at 1535 ("[S]ection [1819(b)(2)(A)] creat[es] a rebuttable presumption of federal jurisdiction.").[9] We are also mindful that when facing the same or substantially similar jurisdictional issues, the Second, Fifth, and Eighth Circuits have each determined that under § 1819(b)(2)(A) a District Court maintains original jurisdiction over pendent state law claims against non-FDIC parties, even after the FDIC has been dismissed. See Adair, 587 F.3d at 244; Casey v. FDIC, 583 F.3d 586, 591 (8th Cir. 2009); Four Star Holding, 178 F.3d at 101.[10] Only the Third Circuit decided differently, interpreting a substantially similar, but now repealed, provision of FIRREA to mean that the District Court lacked original jurisdiction over pendent claims once the federal

---

[9] North Savannah Properties, Castleberry, and Lazuka do not control our analysis here because those cases dealt with different questions under § 1819(b)(2). See N. Savannah Props., 686 F.3d at 1258 (interpreting the meaning of the phrase "substituted as a party" in § 1819(b)(2)(B)); Castleberry, 408 F.3d at 781–85 (addressing various issues related to removal under § 1819(b)(2), but not what happens to pendent claims against non-FDIC defendants after the FDIC is dismissed from the case); Lazuka, 931 F.2d at 1535–39 (discussing the "well-pleaded complaint" rule in the context of § 1819(b)(2)). However, our reasoning in those cases certainly informs our analysis of the issue presented here.

[10] The Fifth Circuit has observed that the Second Circuit has not consistently applied its determination that § 1819(b)(2)(A) creates original jurisdiction over pendent state law claims. Adair, 587 F.3d at 244 n.39; compare Four Star Holding, 178 F.3d at 101 (holding that the removal of the FDIC from litigation "does not divest the court of subject matter jurisdiction under Section 1819"), with King v. Crossland Sav. Bank, 111 F.3d 251, 256 (2d Cir. 1997) (finding exercise of supplemental jurisdiction appropriate over pendent party claims pursuant to § 1367 in case removed pursuant to § 1819(b)(2)), and Mizuna, 90 F.3d at 657 (same). For reasons explained, we agree with the Fifth Circuit that the Second Circuit's approach in Four Star Holding is preferable. See Adair, 587 F.3d at 244 n.39.

receiver was dismissed.  See New Rock Asset Partners, 101 F.3d at 1501

(interpreting 12 U.S.C. § 1441(*l*)(1), since repealed by the Dodd-Frank Wall Street

Reform and Consumer Protection Act of 2010, Pub. L. 111-203, § 364(b), 124

Stat. 1376, 1555 (2010)).  Even the Third Circuit allows a District Court to

exercise supplemental jurisdiction over those claims, however.  See id., 101 F.3d at

1508.[11]

     After careful review, we join the Second, Fifth, and Eighth Circuits in

concluding that when the FDIC is a party to a civil suit and removes that case to

federal court, the District Court has original jurisdiction over claims against non-

FDIC defendants, and this jurisdiction is not lost if the FDIC is later dismissed

from the case.  The language of § 1819(b)(2)(A), the legislative history of

---

[11]  We are not persuaded by the Third Circuit's holding in New Rock Asset Partners for two reasons.  First, the Court was interpreting 12 U.S.C. § 1441a(*l*)(1), the section of FIRREA that created federal jurisdiction over claims involving the Resolution Trust Corporation.  See New Rock Asset Partners, 101 F.3d at 1499.  Although substantially similar in its terms to § 1819(b)(2)(A), § 1441a(*l*)(1) has since been repealed.  See Pub. L. 111-203, § 364(b), 124 Stat. 1376, 1555 (2010).  More significantly, however, New Rock Asset Partners relied heavily on an interpretation of the time-of-filing rule that has since been called into question by that Court, and is at odds with recent Supreme Court authority.  See Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 294 (3d Cir. 2012) ("Although we once declined to apply the time of filing rule in a federal question case, [specifically, in New Rock Asset Partners], subsequent Supreme Court decisions demonstrate the continuing vitality of the rule." (citation omitted)); cf. Grupo Dataflux, 541 U.S. at 582, 124 S. Ct. at 1930 ("We decline to endorse a new exception to a time-of-filing rule that has a pedigree of almost two centuries.  Uncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point particularly wasteful.  The stability provided by our time-tested rule weighs heavily against the approval of any new deviation.").

FIRREA, other canons of statutory construction, our own precedent, and the weight of persuasive authority from other Circuits all lead us to this interpretation.

Thus, as applied to this case, § 1819(b)(2)(A) operated to create arising under jurisdiction over the Tenants' claims against the Drayprop Defendants, and the dismissal of the Tenants' claims against the FDIC did not divest the District Court's jurisdiction over those claims.  See 12 U.S.C. § 1819(b)(2)(A).  Therefore, the District Court improperly dismissed the Tenants' remaining state law claims against the Drayprop Defendants under 28 U.S.C. § 1367(c)(3).  See Hill v. BellSouth Telecomms., Inc., 364 F.3d 1308, 1314, 1317 (11th Cir. 2004) (holding that District Court improperly dismissed plaintiff's claims under § 1367(c)(3) where federal law operated to create "federal question jurisdiction for [plaintiff's] two remaining state-law causes of action"); see also Adair, 587 F.3d at 244–45; Casey, 583 F.3d at 591; Four Star Holding, 178 F.3d at 101; Griffin, 935 F.2d at 696.

## III.    CONCLUSION

The District Court properly granted summary judgment to the FDIC on the Tenants' claims against Darby Bank.  However, the District Court improperly dismissed the remaining claims against the non-FDIC defendants because § 1819(b)(2)(A) operated to create original jurisdiction over those claims.  Thus,

we AFFIRM in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.

**AFFIRMED in part, REVERSED in part, and REMANDED.**