**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-13978

————————————

LIL' JOE RECORDS, INC.,
  a Florida corporation,

*Plaintiff-Counter Defendant-Appellant,*

*versus*

MARK ROSS,

*Defendant,*

CHRISTOPHER WONG WON, JR.,
RODERICK WONG WON,
LETERIUS RAY,
ANISSA WONG WON,
LUTHER CAMPBELL, et al.,

*Defendants-Counter Claimants-Appellees.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-23727-DPG

————————————

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

This appeal presents a question of first impression at the intersection of copyright and bankruptcy. The Copyright Act gives artists a "termination interest"—the right, after a certain amount of time, to reclaim the copyright in their work despite having granted it to a third party. An artist's termination interests are personal and inalienable, although they can be passed to an artist's heirs. Invoking this part of the Copyright Act, Mark Ross and two other members (or their successors in interest) of the rap group 2 Live Crew purported to terminate grants of copyright in five of the group's albums. Because the rap group had four members, these three members could decide as a majority to reclaim the copyrights for the group.

Here's where bankruptcy law comes in. About twenty years before Ross signed the notice to terminate, he filed a Chapter 7 bankruptcy. When someone files for bankruptcy, the Bankruptcy Code says that all that person's interests in property enter the bankruptcy estate, "notwithstanding any provision in . . . applicable nonbankruptcy law" that "restricts or conditions transfer of such interest[s] by the debtor." 11 U.S.C. § 541(c)(1). Ross's termination interests were never mentioned or addressed in the bankruptcy

proceedings. And the Bankruptcy Code says that any property in a Chapter 7 estate that isn't addressed by the bankruptcy court remains property of the estate until it is. *Id.* § 554(c), (d).

Lil' Joe Records, Inc., which eventually acquired the copyrights, argues that 2 Live Crew did not terminate their copyright grants. Among other things, it says that Ross's termination interests (to the extent he had any at all) were held by his bankruptcy estate at the time he attempted to exercise them. We agree. Despite the Copyright Act's alienability restriction, we conclude that Ross's interests became part of his bankruptcy estate and were held as property of that estate at the time he purported to exercise them. Because a majority of 2 Live Crew did not exercise their termination interests, Luke Records still owns the copyrights to these five albums. We reverse the district court's contrary conclusion and remand for proceedings consistent with this opinion.

## I.

We start by summarizing the statutory framework because it provides context for this dispute. We then turn to the facts and procedural history of this appeal.

### A.

This case is about section 203 of the Copyright Act and sections 541 and 554 of the Bankruptcy Code.

Section 203 of the Copyright Act allows the authors of copyrighted works (or their successors in interest) to terminate grants of copyrights. 17 U.S.C. § 203(a). The author (or his successors) can

exercise his termination interests only by serving a signed, written notice on a copyright grantee or the grantee's successor in title. *Id.* § 203(a)(4). The grantee must receive the notice two to ten years before the effective date of the termination. *Id.* And that effective date must fall during a five-year window that begins no earlier than thirty-five years after a grant of the copyright. *Id.* § 203(a)(3).

There are two aspects of section 203 that are important in this case. First, if a work has multiple authors, section 203 requires a majority of those authors (or their successors in interest) to sign a notice to cause a termination. *Id.* § 203(a)(1), (4). And the termination will not take effect unless the notice is recorded in the Copyright Office. *Id.* § 203(a)(4)(A). Second, section 203 makes an author's termination interests inalienable by agreement. *See id.* § 203(a)(5) (explaining that termination can be effected "notwithstanding any agreement to the contrary"). And it restricts the inheritors of the interests to close family members or the author's executor, administrator, personal representative, or trustee. *Id.* § 203(a)(2)(A)–(D).

As for section 541 of the Bankruptcy Code, it defines what is the property of the bankruptcy estate. Section 541(a)(1) defines the property of a debtor's bankruptcy estate to include "all legal or equitable interests of the debtor in property" as of the creation of the estate. 11 U.S.C. § 541(a)(1). Although it contains exceptions, *see id.* § 541(a)(1), (b), (c)(2), none are relevant here. And it applies "notwithstanding any provision in . . . applicable nonbankruptcy law" that "restricts or conditions transfer of such interest[s] by the

24-13978                Opinion of the Court                5

debtor." *Id*. § 541(c)(1). Property that is scheduled but not adminis-
tered defaults back to the debtor when his Chapter 7 case closes.
*Id*. § 554(c). But property that is not scheduled, administered, or
formally abandoned remains property of the estate "[u]nless the
court orders otherwise." *See id*. § 554(c), (d).

                                    *B.*

        With this framework in mind, we turn to the facts. The rap
group 2 Live Crew recorded five albums between 1986 and 1989. 2
Live Crew had four members: Luther Campbell, Mark Ross, Chris-
topher Wong Won, and David Hobbs. The group entered into a
written agreement with Luke Records, Inc.,[1] a recording company
owned by Campbell, that gave Luke Records the sound recording
copyrights in all master recordings that the group made during the
agreement's term. It covered an initial term from January 1 to De-
cember 31, 1987, but it gave Luke Records the option to extend the
agreement through 1990.

        In 1995, more than four years after the last possible effective
date of the agreement, Luke Records and Campbell entered jointly
administered Chapter 11 bankruptcy proceedings. As part of the
bankruptcy, Luke Records sold all sound recording copyrights that
it received under the agreement to Lil' Joe Records and Joseph
Weinberger.

---

[1] Luke Records, Inc. was named Skyywalker Records, Inc. at the time of the
agreement. But we describe all iterations of the record company as Luke Rec-
ords to avoid confusion.

In 2000, over nine years after the last possible effective date of the agreement but more than a decade before 2 Live Crew could terminate any grants that the agreement enacted, Ross filed for Chapter 7 bankruptcy. The parties concede that no one scheduled, administered, or mentioned Ross's termination interests during his bankruptcy.

In 2020, over twenty-nine years after the last possible effective date of the agreement and within the window for noticing terminations of its provisions, Campbell, Ross, and Wong Won's heirs served a termination notice on Weinberger, Lil' Joe, and related companies. That notice purported to terminate 2 Live Crew's grants to Luke Records of copyrights in the five albums that the group recorded between 1986 and 1989. Campbell, Ross, and Wong Won's heirs recorded the notice with the Copyright Office.

### C.

We now turn to the procedural history. After Lil' Joe received the termination notice, it sued Campbell, Ross, and Wong Won's heirs. Lil' Joe sought a declaratory judgment that they could not or did not terminate the grants of the copyrights listed in the termination notice. As relevant here, Lil' Joe argued that Ross transferred his termination interests through bankruptcy, rendering the termination notice ineffective because too few interest owners signed it.

Campbell, Ross, and Wong Won's heirs counterclaimed for a declaration that Ross could and did terminate the relevant transfers. The parties then cross-moved for summary judgment about

whether Ross lost his termination interests to bankruptcy and the notice terminated the copyrights. The district court interpreted 17 U.S.C. § 203 and 11 U.S.C. § 541(a)(1) to exclude Ross's termination interests from his bankruptcy estate, but it denied on other grounds both parties' motions for summary judgment about the effectiveness of the notice. The case proceeded to trial. Before trial, Lil' Joe moved for the district court to reconsider its summary judgment ruling, but the district court denied its motion.

After trial, the district court concluded that the termination notice was valid based on the jury's factual findings. Lil' Joe then appealed the district court's final judgment, its denial of Lil' Joe's motion for summary judgment, and its denial of Lil' Joe's motion for reconsideration.

## II.

We review *de novo* the district court's interpretations of 17 U.S.C. § 203 and 11 U.S.C. § 541(a). *See Wilson v. Hearos, LLC*, 128 F.4th 1254, 1259 (11th Cir. 2025) (citing *Lindley v. FDIC*, 733 F.3d 1043, 1050 (11th Cir. 2013)).

## III.

For 2 Live Crew's termination notice to be valid, Ross had to properly exercise his termination interests. *See* 17 U.S.C. § 203(a)(1). Lil' Joe argues that Ross could not exercise his interests when he signed the notice because he had previously filed for bankruptcy and those interests were still held in his bankruptcy estate.

2 Live Crew[2] argues that Ross's interests were never part of the estate but, even if they were, they were released by the time Ross signed the notice.

We agree with Lil' Joe. We believe Ross's bankruptcy estate gained control of his termination interests because they are interests in property. And, because Ross's bankruptcy did not dispose of those interests, we believe his bankruptcy estate still held them at the time Ross tried to exercise them. Thus, we conclude that the termination notice was ineffective.

*A.*

We start with whether Ross's termination interests were part of his bankruptcy estate. The Bankruptcy Code, 11 U.S.C. § 541(a)(1), swept Ross's termination interests into his bankruptcy estate before he invoked them because he held them as "interests . . . in property" when he filed for bankruptcy. Section 541(a)(1) sweeps into the debtor's bankruptcy estate (1) "all legal or equitable interests of the debtor in property" that (2) existed "as of the commencement of the [bankruptcy] case." *Id.* It contains limited exceptions, *see id.* § 541(a)(1), (b), (c)(2), but none are relevant here.

Ross's termination interests meet each of the section's requirements. A termination interest is an "interest[] . . . in property"

---

[2] The appellees are one of 2 Live Crew's four original members and the successors in interest of two other members. But, for ease of reference, we'll refer to the appellees as 2 Live Crew.

under section 541(a)(1) because it is a contingent right to regain intellectual property. A property interest is "all or part of a legal or equitable claim to or right in property." *Interest*, BLACK'S LAW DICTIONARY (12th ed. 2024). Copyrights are intellectual property. *Dowling v. United States*, 473 U.S. 207, 216 (1985); *see also* 11 U.S.C. § 101(35A) (defining "intellectual property" to include "work[s] of authorship protected" by the Copyright Act "to the extent protected by applicable nonbankruptcy law"). And termination interests are contingent rights to regain that intellectual property years after transferring it away. *See* 17 U.S.C. § 203(a)(3), (b). Because termination interests are contingent legal "right[s] in property," they are "interests . . . in property" under section 541(a)(1).

Moreover, Ross's termination interests—if they existed at all—existed "as of the commencement of" his bankruptcy case. 11 U.S.C. § 541(a)(1). Makers of works for hire do not ordinarily gain copyrights in those works, 17 U.S.C. § 201(a), (b), or termination interests in those copyrights, *id.* § 203(a). But authors of copyrighted works other than works for hire gain termination interests when they transfer copyrights in those works. *See id*. Assuming the relevant records were not made for hire, Ross acquired and transferred copyrights in them ten or more years before he filed for bankruptcy. So his interests existed as of the commencement of his bankruptcy case if they existed at all.

2 Live Crew's counterarguments are not convincing. 2 Live Crew asserts that termination interests cannot enter a bankruptcy estate because 17 U.S.C. § 203 makes them inalienable from and

personal to an author or his statutory heirs. But 2 Live Crew looks to the wrong law to determine what property enters a bankruptcy estate. Although the "underlying substantive law"—ordinarily state law but here section 203—determines the nature and extent of a debtor's interest in property, *see Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000), "federal bankruptcy law" determines "to what extent that interest is property of the estate," *In re Builders Transp., Inc.*, 471 F.3d 1178, 1185 (11th Cir. 2006) (quoting *In re Thomas*, 883 F.2d 991, 995 (11th Cir. 1989)). And federal bankruptcy law sweeps termination interests into a debtor's estate under section 541 "notwithstanding any provision in . . . applicable nonbankruptcy law" that "restricts or conditions transfer of such interest[s] by the debtor." 11 U.S.C. § 541(c)(1). So Ross's termination interests entered his bankruptcy estate under section 541 regardless of whether section 203 made them personal and inalienable.

We reached a similar conclusion in *In re Smith*, 85 F.3d 1555 (11th Cir. 1996). That case asked whether the statutory right of redemption under Alabama law could become part of a debtor's bankruptcy estate under section 541 of the Bankruptcy Code. *Id.* at 1558. Like section 203 termination interests, the right of redemption was protected by substantive nonbankruptcy law from "alienation except in the cases provided for" by that law. ALA. CODE § 6-5-250 (1975). And nonbankruptcy law also defined the right of redemption as a "mere personal privilege[] and not property or [a] property right[]." *Id.* Regardless, we held that the right of redemption became property of the debtor's bankruptcy estate under section 541 because it fit within that section's "broad definition" of

property of the estate. *See In re Smith*, 85 F.3d at 1558. Although substantive nonbankruptcy law defined the scope of the right, federal bankruptcy law determined whether it entered the bankruptcy estate. *See id.* at 1558, 1561. So too here.

Even if section 203 conflicted with section 541 about what property interests can enter a debtor's bankruptcy estate, section 541 would supersede section 203 to the extent of that conflict. When a specific law conflicts with a general law, the specific law is ordinarily "treated as an exception to the general rule." *Savage Servs. Corp. v. United States*, 25 F.4th 925, 946 (11th Cir. 2022) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 183 (2012)). If section 203 created a general rule that living authors could not transfer their termination interests anywhere, including to their bankruptcy estates, section 541 would create a specific exception to that rule that permits those interests to enter bankruptcy estates. *See* 11 U.S.C. § 541(a)(1), (c)(1).

2 Live Crew also argues that Ross's termination interests did not enter his bankruptcy estate because they were contingent rights. Ross's rights to regain his copyrights were contingent on (1) Ross surviving until he could use his termination interests and (2) Ross and his co-grantors deciding to use those interests. *See* 17 U.S.C. § 203(a)(1), (3)–(4). But "an interest is not outside" the reach of the Bankruptcy Act because it is "contingent or because enjoyment must be postponed." *In re Alvarez*, 224 F.3d 1273, 1279 (11th Cir. 2000) (quoting *Segal v. Rochelle*, 382 U.S. 375, 379 (1966)); *see*

*also In re Nordlicht*, 115 F.4th 90, 105 (2d Cir. 2024) ("[E]very conceivable interest of the debtor, . . . contingent, speculative, and derivative, is within the reach of § 541 . . . ." (alteration in original) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008))); *In re Majestic Star Casino, LLC*, 716 F.3d 736, 750 (3d Cir. 2013) (explaining that an interest is not outside the reach of the Bankruptcy Act because it is "contingent or because enjoyment must be postponed" (quoting *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006))); *In re Burgess*, 438 F.3d 493, 499 (5th Cir. 2006) ("[A] debtor's interest in property may be contingent—or enjoyment of the interest may be postponed . . . ."); *Ryan v. Branko Prpa MD, LLC*, 55 F.4th 1108, 1117 (7th Cir. 2022) (explaining that section "541's definition of the 'property of the estate' is to be construed broadly and includes contingent interests" (citing *Chi. Bd. of Trade v. Johnson*, 264 U.S. 1, 12 (1924))); *In re Simply Essentials, LLC*, 78 F.4th 1006, 1009 (8th Cir. 2023) ("The property of the estate includes . . . contingent interests held by the debtor prior to the filing of bankruptcy." (citing *Segal*, 382 U.S. at 379)). *But cf. In re Bracewell*, 454 F.3d 1234, 1242 (11th Cir. 2006) (explaining that "[t]he *Segal* decision," which held that novel and contingent interests could enter a debtor's bankruptcy estate, "told us how to define property under the old bankruptcy code, before it was amended in 1978").

Ross's termination interests existed when he entered bankruptcy as contingent rights to regain his copyrights, so those interests entered his bankruptcy estate under 11 U.S.C. § 541(a)(1).

### B.

Two legal conclusions follow directly from our determination that Ross's termination interests were part of his bankruptcy estate.

First, Ross could not exercise his termination interests when he signed the notice because they remained with his bankruptcy estate. A debtor has "no right to . . . control" property of the estate "while it remains property of the estate." *In re Mwangi*, 764 F.3d 1168, 1178 (9th Cir. 2014); *see also Hutchins v. IRS*, 67 F.3d 40, 43 (3d Cir. 1995) (explaining that "only the bankruptcy trustee" has authority to control "unscheduled assets" retained by the estate). And Ross's termination interests remained property of his estate when he tried to exercise them. In a Chapter 7 case like Ross's case, property that is not scheduled, administered, or formally abandoned remains property of the estate "[u]nless the court orders otherwise." *See* 11 U.S.C. § 554(c), (d). 2 Live Crew concedes that the bankruptcy court and bankruptcy filings "never mentioned, let alone identified" Ross's termination interests. Appellees' Br. at 8–9, 31. Because no one scheduled, administered, formally abandoned, or mentioned those interests, they remained part of Ross's bankruptcy estate when he signed the notice. *See* 11 U.S.C. § 554(d). So he could not exercise them at that time.

Second, without Ross, the group's termination notice exercised at most two of the group members' interests. That number is too few to terminate a transfer of copyright that—like the alleged transfer at issue—was executed by four authors. *See* 17 U.S.C. §

203(a)(1), (4). A termination notice ends a transfer made by multiple authors only if it exercises most of their interests. *Id.* So two out of four interests is one interest short of an effective termination.

Although we conclude that Ross's termination interests were property of the bankruptcy estate at the time he purported to exercise them, our decision is limited. We do not address how termination interests should be treated in bankruptcy. And we do not decide today what Ross's heirs need to do to exercise those interests in the light of his bankruptcy.

## IV.

We **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.